# 24-0634-CV

## United States Court of Appeals

*for the*

## Second Circuit

LEGO A/S, LEGO SYSTEMS, INC., LEGO JURIS A/S,

*Plaintiffs-Counter-Defendants-Appellees,*

– v. –

ZURU INC.,

*Defendant-Counter-Claimant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## PAGE PROOF BRIEF FOR
## DEFENDANT-COUNTER-CLAIMANT-APPELLANT

Fatima Lahnin
CARMODY TORRANCE SANDAK
  & HENNESSEY LLP
195 Church Street, 18th Floor
New Haven, Connecticut 06510
(203) 777-5501

Daniel C. Posner
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
danposner@quinnemanuel.com

– and –

Todd Anten
William B. Adams
Dylan I. Scher
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendant-Counter-Claimant-Appellant*

May 24, 2024



## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellant Zuru Inc. is a privately held company with no corporate parent, and no publicly held corporation owns 10% or more of its stock.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................1

JURISDICTIONAL STATEMENT ..........................................................8

ISSUES PRESENTED.............................................................................9

STATEMENT OF THE CASE...................................................................9

    A.    TLG's Minifigure .............................................................9

        1.    TLG's Highly Functional And "Perfectly" Compatible Minifigure .....................................................................9

        2.    TLG's Asserted Rights In The Minifigure ...............13

        3.    TLG's Admissions About The Limited Scope Of Its Asserted Minifigure Rights.......................................15

    B.    Zuru's First- and Second-Generation MAX Figurines .......................19

    C.    TLG's Lawsuit Against Zuru ...........................................22

        1.    The 2019 Preliminary Injunction And Contempt Order..........22

        2.    Discovery And The Unresolved 2022 Summary Judgment Motions ......................................................................23

        3.    The Proceedings On Zuru's Third-Generation Figurines.........25

            a.    Zuru's Notice Of Its Third-Generation Figurines .........25

            b.    TLG's Motion To Enjoin The Third-Generation Figurines .......................................................................27

            c.    The Order Enjoining The Third-Generation Figurines .......................................................................33

SUMMARY OF ARGUMENT .................................................................34

STANDARD OF REVIEW .....................................................................36

ARGUMENT ..........................................................................................37

I.    THIS COURT HAS JURISDICTION OVER THIS APPEAL ....................37

    A.    This Court Is The Proper Circuit For This Appeal .............................37

    B.    The Order Is Appealable Under 28 U.S.C. § 1292(a)(1) Because It Grants Or Modifies An Injunction.................................................40

II.   THE DISTRICT COURT ERRED TO THE EXTENT IT RULED
      THAT TLG IS LIKELY TO SHOW THAT ZURU'S THIRD-
      GENERATION FIGURINES ARE SUBSTANTIALLY OR
      CONFUSINGLY SIMILAR TO THE ASSERTED MINIFIGURE
      COPYRIGHTS OR TRADE DRESS ................................................... 47

      A.   There Is No Actionable Substantial Similarity Between The
           Third-Generation Figurines And The Asserted Minifigure
           Copyrights ................................................................................... 49

           1.   The District Court Failed To Apply The Governing Legal
                Standard For Copyright Infringement ...................................... 49

           2.   Under The Proper Test For Copyright Infringement,
                Zuru's Third-Generation Figurines Are Not Infringing .......... 55

           3.   The District Court Disregarded TLG's Admissions Of
                Non-Infringement ..................................................................... 59

      B.   There Is No Actionable Confusing Similarity Between The
           Third-Generation Figurines And The Asserted Minifigure Trade
           Dress ............................................................................................ 61

III.  THE DISTRICT COURT ERRED INDEPENDENTLY BY
      GRANTING INJUNCTIVE RELIEF WITHOUT ADDRESSING
      ANY OF THE EQUITABLE FACTORS ...................................... 66

      A.   TLG Failed To Show That It Would Suffer Irreparable Harm
           Absent A Preliminary Injunction ............................................... 66

      B.   TLG Failed To Show The Balance Of Hardships Favors A
           Preliminary Injunction ............................................................... 68

      C.   TLG Failed To Show The Public Interest Favors A Preliminary
           Injunction .................................................................................... 68

IV.   IN THE ALTERNATIVE, THE COURT SHOULD REMAND FOR
      CLARIFICATION ....................................................................... 69

CONCLUSION ..................................................................................... 71

CERTIFICATE OF COMPLIANCE .................................................... 72

CERTIFICATE OF SERVICE ............................................................. 73

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABC Corp. I v. P'ship & Unincorporated Ass'ns*,
51 F.4th 1365 (Fed. Cir. 2022) ..............................................46

*Al-Bukhari v. Dep't of Corr.*,
720 F. App'x 655 (2d Cir. 2018) ............................................46

*Amperion, Inc. v. Current Grp., LLC*,
444 F. App'x 477 (2d Cir. 2011) ............................................40

*Anderson Grp., LLC v. City of Saratoga Springs*,
805 F.3d 34 (2d Cir. 2015) ....................................................63

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
2024 WL 89120 (2d Cir. Jan. 9, 2024) ..............................62, 63

*Arkansas Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
879 F.3d 474 (2d Cir. 2018) ..................................................70

*Bragg v. Jordan*,
669 F. Supp. 3d 257 (S.D.N.Y. 2023) ....................................48

*Cardinal Motors, Inc. v. H&H Sports Protec. USA, Inc.*,
2021 WL 1758881 (S.D.N.Y. May 4, 2021) ..........................63

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
933 F.2d 162 (2d Cir. 1991) ..................................................70

*Cohen v. FB Air, Inc.*,
995 F.2d 378 (2d Cir. 1993) ............................................36, 70

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
246 F.3d 142 (2d Cir. 2001) ..................................................70

*Devose v. Herrington*,
42 F.3d 470 (8th Cir. 1994) ..................................................46

*E.E.O.C. v. Loc. 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*,
76 F.3d 76 (2d Cir. 1996) ......................................................41

*Ethicon, Inc. v. U.S. Surgical Corp.*,
762 F. Supp. 480 (D. Conn. 1991), *aff'd*, 965 F.2d 1065 (Fed. Cir. 1992)........69

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ..................................................66

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
25 F.3d 119 (2d Cir. 1994) ....................................................49

*Hendrickson v. United States*,
  791 F.3d 354 (2d Cir. 2015) ...................................................................39

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
  535 U.S. 826 (2002) ..............................................................................38

*Hudson Furniture, Inc. v. Lighting Design Wholesalers Inc.*,
  2021 WL 6105489 (2d Cir. Dec. 21, 2021) ............................37, 39, 40

*Ill. Tool Works, Inc. v. Grip-Pak, Inc.*,
  906 F.2d 679 (Fed. Cir. 1990) ...............................................................68

*In re Tronox Inc.*,
  855 F.3d 84 (2d Cir. 2017) ...............................................................40, 41

*Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*,
  152 F.3d 941, 1998 WL 130466 (Fed. Cir. 1998) .................................38

*Jack Daniel's Props., Inc. v. VIP Prod. LLC*,
  599 U.S. 140 (2023) ..............................................................................62

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995) .......................................................................68

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
  71 F.3d 996 (2d Cir. 1995) ...............................................................50, 54

*Lego A/S v. Best-Lock Constr. Toys, Inc.*,
  874 F. Supp. 2d 75 (D. Conn. 2012) ............................................18, 19, 53
  404 F. Supp. 3d 583 (D. Conn. 2019) .........................19, 49, 52, 54, 55

*Lego A/S v. Zuru Inc.*,
  799 F. App'x 823 (Fed. Cir. 2020) .........................................................22

*Martens v. Thomann*,
  273 F.3d 159 (2d Cir. 2001) ...................................................................70

*Mattel, Inc., v. Azrak-Hamway Int'l, Inc.*,
  724 F.2d 357 (2d Cir. 1983) ........................................................6, 50, 51

*Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*,
  523 F. App'x 756 (2d Cir. 2013) ...........................................................41

*Oneida Nation of N.Y. v. Cuomo*,
  645 F.3d 154 (2d Cir. 2011) ...............................................................36, 48

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ...............................................................50, 54

*Pirone v. MacMillan, Inc.*,
  894 F.2d 579 (2d Cir. 1990) ...................................................................62

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961) ...................................................................63

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
   793 F.3d 1177 (10th Cir. 2015) ...................................................37, 38

*Salinger v. Colting*,
   607 F.3d 68 (2d Cir. 2010) ...........................................................66, 68

*Sanho Corp. v. KaiJet Tech. Int'l Ltd.*,
   2020 WL 1800372 (N.D. Ga. Jan. 22, 2020)....................................68

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ........................................................50, 53

*Scipar, Inc. v. Simses*,
   354 F. App'x 560 (2d Cir. 2009) .......................................................41

*Silverman v. CBS Inc.*,
   870 F.2d 40 (2d Cir. 1989) ...........................................................42, 43

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
   909 F.3d 519 (2d Cir. 2018) ..............................................................70

*SMS Grp. Inc. v. Pharmaaid Corp.*,
   2023 WL 6929653 (E.D.N.Y. Oct. 19, 2023) ..................................54

*Storck USA, L.P. v. Farley Candy Co.*,
   14 F.3d 311 (7th Cir. 1994) ...............................................................69

*Stormy Clime Ltd. v. ProGroup, Inc.*,
   809 F.2d 971 (2d Cir. 1987) ..............................................................63

*Sussman v. Crawford*,
   488 F.3d 136 (2d Cir. 2007) ..............................................................48

*TiVo Inc. v. EchoStar Corp.*,
   646 F.3d 869 (Fed. Cir. 2011) ..........................................................44

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995) ..................................................................46

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001)........................................................................62, 63

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
   423 F.3d 137 (2d Cir. 2005) ...........................................36, 40, 42, 44

*Wilder v. Bernstein*,
   49 F.3d 69 (2d Cir. 1995) ..................................................................41

*Winsness v. Yocom*,
   433 F.3d 727 (10th Cir. 2006) ..........................................................38

*Zivkovic v. Laura Christy LLC*,
   94 F.4th 269 (2d Cir. 2024) ..............................................................70

## **Statutes and Rules**

17 U.S.C. § 101 ..................................................................................16

28 U.S.C. § 1292(a)(1) ...........................................1, 7, 37 40, 46

28 U.S.C. § 1292(c)(1) .....................................................................37

28 U.S.C. § 1294(1) ..........................................................................37

28 U.S.C. § 1295(a)(1) ................................................................37, 38

28 U.S.C. § 1331 .................................................................................8

28 U.S.C. § 1338(a) ..........................................................................38

28 U.S.C. § 1338(b) .............................................................................8

28 U.S.C. § 1631 ...............................................................................39

Fed. R. Civ. P. 65 .............................................................................70

Fed. R. Civ. P. 65(b)(2) ...................................................................47

Fed. R. Civ. P. 65(c) .........................................................................45

## **Other Authorities**

2 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION,
    § 11:73 ...........................................................................................64

## PRELIMINARY STATEMENT

This appeal turns on whether the U.S. District Court for the District of Connecticut (Thompson, J.) improperly enjoined Defendant-Appellant Zuru Inc. from selling *any* of ten proposed redesigned figurines based on a fundamental misapplication of copyright and trade-dress law. In its one-sentence ruling, devoid of reason or explanation, the district court inexplicably expanded the scope of any copyright and trade-dress protection to which Plaintiffs-Appellees "TLG" (short for "The Lego Group") are entitled in the body form of their "Minifigure" to include *unprotectable* elements like basic human body parts and features that contribute to the Minifigure's functionality and fit within TLG's construction-toy "play system."

Zuru, a toy company based in New Zealand, has already been "preliminarily" enjoined from selling earlier versions of its figurines for more than *five years*. The district court has held the parties' cross-motions for summary judgment under submission for more than two years, and there is no trial date. Apart from Zuru's request to sell its redesigned figurines, there has been virtually no litigation activity in the case for years. With no present ability to compete against TLG, no guidance about how its redesigned figurines may infringe any protectable elements of the Minifigure, and no end to this case in sight, Zuru brings this interlocutory appeal of the district court's latest injunctive order under 28 U.S.C. § 1292(a)(1).

1

TLG asserts copyright and trade-dress rights over the Minifigure body form:



As a construction-toy figurine that TLG designed to "***fit perfectly***" within its play system of tiny plastic elements commonly known as "legos"—including bricks, accessories, and figurines—the design of the Minifigure is dictated by its function. Indeed, TLG has described the Minifigure as a "***technical marvel***" in that all of its elements (head, torso, legs/feet) can mix and match perfectly with all other elements in the play system to provide limitless opportunities for creation. Acknowledging the Minifigure's broad functionality, TLG previously protected it, and other elements of the play system, with utility patents. But those utility patents have expired, leaving all functionality in the public domain, and allowing any competitor to sell products—including figurines—that fit and function within the play system just as well as TLG's own products.

Under this Court's precedents, TLG may not use its asserted copyrights or trade dress to effectively extend its long-expired utility patents by protecting features

of the Minifigure that are unoriginal or that contribute to the Minifigure's fit and function. For example, the copyrights and trade dress asserted in this case do not protect the Minifigure's basic human-body form, sizes, or proportions, because these features are necessary for the Minifigure to look like a "little man" and "fit perfectly" in the play system. And TLG agrees it cannot protect the Minifigure's "c-cup" hands, the "stud" on the head, or the "holes" on the legs because they all facilitate attachment.

In light of all the features that contribute to its fit and function, the Minifigure is entitled to, at most, very thin copyright or trade-dress protection. In prior litigation, TLG itself recognized this when it represented to the district court that: (1) it has no right to own the "idea of a little man" that attaches to other elements in its play system; and (2) only figurines that are, in its own words, "***identical***" to the Minifigure are infringing. TLG thus also acknowledged that alternative figurines that, on first glance, may "look similar" to the Minifigure because they share basic body forms, sizes, and proportions, nevertheless are non-infringing, "***different expressions***" of an unprotectable idea. Examples of these admittedly "different" figurines include those to the right of the Minifigure below:

3



| TLG Minifigure | *Non-Infringing* Kre-O | *Non-Infringing* Mega Bloks | *Non-Infringing* Friends |
|---|---|---|---|

On this background, Zuru provided TLG with advanced notice, as the district court required, of its intent to sell any of the ten proposed "Third-Generation-Figurines" shown below so that it could fairly compete against TLG during this case:

| TLG's Minifigure | Zuru 3rd Gen v.1 | Zuru 3rd Gen v.2 | Zuru 3rd Gen v.3 | Zuru 3rd Gen v.4 | Zuru 3rd Gen v.5 |
|---|---|---|---|---|---|
| TLG's Minifigure | Zuru 3rd Gen v.6 | Zuru 3rd Gen v.7 | Zuru 3rd Gen v.8 | Zuru 3rd Gen v.9 | Zuru 3rd Gen v.10 |

It was undisputed below that Zuru's Third-Generation Figurines are even *more* different from the Minifigure than those TLG conceded are safely "*different expressions*." This should have ended the matter. Instead, TLG objected wholesale to all ten redesigns and moved for a TRO to bar Zuru from selling any of them. Despite extensive briefing and argument—including Zuru's submission of an expert report and its reliance on the substantial discovery record that arose after the district court entered the 2019 preliminary injunction—the district court did not rule on the TRO at all, but rather concluded, *in a one-sentence order*, that all ten re-designs are "subject to" the earlier preliminary injunction.

The district court's implicit conclusion that all ten Third-Generation Figurines are likely to infringe TLG's asserted Minifigure copyrights or trade dress is manifestly wrong as a matter of law. After excluding any similarities in *unoriginal* or *unprotectable* features of the Minifigure that allow Zuru's figurines to also look like a "little man" and fit and function in the play system—as the Court must do under controlling law—no actionable similarities remain. Instead, the particularized expressions of all the potentially protectable features of the Minifigure—the specific and particular shapes of the head, torso, arms, legs, and feet—are different in the Third-Generation Figurines. For example:

5

| TLG Minifigure | Zuru Third-Generation (Version 7) |
|---|---|
| • Cylindrical head with protruding "stud." <br> • No chin. <br> • No ears. | • Round head with hole on top (no "stud"). <br> • Chin at bottom. <br> • Protruding ears. |
| • Perfectly trapezoidal block torso that expands. | • Human-shaped, muscular torso that narrows. |
| • No shoulder definition. <br> • Cylinder arms attaching below top of torso. <br> • Arms angle inward. | • Protruding round shoulders rise above torso. <br> • Arms expand. <br> • Arms angle outward. |
| • Legs attached to hip plate. <br> • Protruding round joint. <br> • Thin gap between legs. | • Legs separated from hip with "negative space." <br> • Wide gap between legs. |
| • Rectangular block legs. | • Tapered, rounded legs. <br> • Bendable knees. |
| • Square feet. | • Rounded feet. |

This Court concluded in *Mattel, Inc., v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983), that competing muscular toy action figures were not infringing because even though "the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea." So too here, any similarities are attributable to unprotectable ideas; Zuru's particular expression of those ideas greatly differs from TLG's.

By granting TLG a preliminary injunction against all ten Third-Generation Figurines despite the absence of any evidence (or even argument) of similarities among potentially protectable features of the Minifigure, the district court effectively awarded TLG a potentially years-long monopoly over ***any*** "little man"

figurine compatible with its play system.  The ruling betrays the foundation of copyright and trademark law and calls out for reversal for the following reasons.

*First*, this Court has jurisdiction over Zuru's appeal.  This Court is the correct Circuit to hear this appeal because TLG voluntarily abandoned the design-patent claims it previously asserted, thereby constructively amending its complaint and depriving the Federal Circuit of jurisdiction.  And the ruling below is immediately appealable under 28 U.S.C. § 1292(a)(1) as a "modification" of the prior preliminary injunction, if not an entirely new injunction, because it: (1) substantially, and wrongly, extended the scope of the prior injunction to apply to figurines that are "similar" to the Minifigure only as to unprotectable features; and (2) wholly revised the enforcement mechanism of the prior injunction by eliminating TLG's obligation to prove its entitlement to a TRO against any redesigned figurines Zuru proposes.

*Second*, the district court erred in concluding that Zuru's Third-Generation Figurines are "subject to" the prior preliminary injunction, as such a ruling required a finding that TLG is likely to prove that the Third-Generation Figurines are substantially or confusingly similar to the ***protectable expression*** of the Minifigure—a determination the court never made.  And here, any similarities between the Third-Generation Figurines and the Minifigure are limited solely to ***unprotectable*** elements that must exist in any toy figurine attempting to mimic the Minifigure's human form and its fit and function in the TLG play system.  Indeed,

7

TLG never disputed this below, and the district court never addressed it. Moreover, TLG has already conceded that other figurines that are more similar to the Minifigure than Zuru's are "different expressions" of the same idea; under TLG's own logic, the Third-Generation Figurines must be too.

*Third*, in addition to TLG's failure to demonstrate a likelihood of success on the merits, which itself is dispositive, TLG did not satisfy the remaining elements of preliminary injunctive relief either—there is no irreparable harm, the balance of hardships favors Zuru, and there is a public interest in fair competition. The district court abused its discretion to the extent it implicitly determined otherwise.

*Fourth*, if the Court is not inclined to reverse outright, it should at least vacate the Order and remand to the district court for explicit findings about why Zuru's Third-Generation Figurines are likely to infringe, with this Court's guidance on the applicable legal standards.

## JURISDICTIONAL STATEMENT

The district court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(b) because, *inter alia*, TLG's claims arise under the Lanham and Copyright Acts. This Court has jurisdiction under 28 U.S.C. §§ 1292(a)(1) and 1294(1) because: (i) TLG voluntarily abandoned its patent claims, depriving the Federal Circuit of jurisdiction; and (ii) the district court's Order "grant[ed]" or "modif[ed]"

an injunction in prohibiting Zuru from selling any of its ten proposed redesigned figurines. *See infra* Part I.

## ISSUES PRESENTED

1. Whether this Court has jurisdiction over this copyright and trade-dress appeal.

2. Whether the district court erred in implictly ruling that TLG is likely to prove that the Third-Generation Figurines are substantially (for copyright) or confusingly (for trade dress) similar to the Minifigure.

3. Whether the district court erred in enjoining the Third-Generation Figurines without addressing the remaining preliminary injunction factors.

4. Whether this Court, in the alternative, should remand for clarification, with guidance as to the applicable legal standards.

## STATEMENT OF THE CASE

### A.  TLG's Minifigure

#### 1.  TLG's Highly Functional And "Perfectly" Compatible Minifigure

Since 1978, the Minifigure has facilitated role-play in TLG's "play system" of plastic, interconnecting, construction-toy elements which "all … fit together, can be used in multiple ways, [and] can be built together." [Dkt.236.Zuru.SJ.Stmt.of.Fact.("SOF").1;  Dkt.239.at.Ex.14;  Dkt.236.at.Ex.43

(145:18-146:15)].[1]  To ensure "complete compatibility" with the play system, TLG designed its Minifigure to adhere to a precise system of measurements known as the "███████████████."   [Dkt.236.at.SOF.6;  Ex.17-LEGOGROUP0010081-83; Ex.41(112:2-5);  Ex.42(1:2-52:18;  92:24-95:25;  101:9-103:21);  Ex.43(198:25-199:6)].  The Minifigure has maintained a consistent size and shape, with a basic humanoid form defined by what TLG describes as ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. [Dkt.236.at.SOF.3; Ex.17-LEGOGROUP0009940; Ex.41(88:15-89:19); Ex.42(53:9-58:20, 65:10-66:16)].

According to TLG, at a height of 40 millimeters—which is also "four bricks" and "four heads" high (no coincidence)—the Minifigure "*fits perfectly* into the Lego System in Play."   [Dkt.236.at.SOF.7;  Ex.41(112:20-113:3,  124:15-126:5); Ex.42(110:11-24); Ex.43(199:7-22); Dkt.239.at.Ex.14].  This means that *any* Minifigure, and the elements thereof (*i.e.*, the detachable heads, torsos, or legs/feet), can mix and match with virtually every other element, including bricks and accessories (helmets, hairpieces, wands, swords, etc.), so that *all elements* "████ ████████████████." [Dkt.236.at.SOF.7; Ex.41(134:21-135:6); Ex.43(145:18-

---

[1]  For ease of referencing the extensive record, Zuru sometimes cites herein to its Statement of Facts (or responses thereto) in connection with the parties' cross-motions for summary judgment, and expressly incorporates the evidence assembled in support of such statements.

147:14)].  As TLG touts at its "Legohouse" museum in Denmark, the Minifigure has "perfect proportions" and is a "technical marvel," and its "dimensions … match all standards in the LEGO system."  [Dkt.313.at.Ex.D(p.15)].

TLG's schematic drawings highlight the precision with which TLG designed the Minifigure to ensure its "perfect" fit within the play system ([Dkt.236.at.Ex.17-LEGOGROUP0009978)]):



TLG describes the Minifigure as having ████████████████████ ███████████████████████" that contribute to the "***Functionality Of The Lego Minifigure***" ([Dkt.236.at.SOF.9; Ex.17-LEGOGROUP0009979; Ex.42(76:4-77:13); Ex.44(276:20-278:20)]), as shown below:

11



And the Minifigure has still more features that TLG admits promote fit and function ([Dkt.236.at.SOF.10; Ex.41(230:15-245:24); Ex.42(7:3-14:4)]), to the point that, TLG concedes, the Minifigure has **no features** that ███████████ ██████████████████████████ ([Dkt.236.at.SOF.11, Ex.42(14:5-15:18, 16:17-18:2)]). Indeed, TLG's designee on the topic of Minifigure design could not identify **any** features of the Minifigure that could be ███████████ ████████████████████████████████ ███████." [Dkt.236.at.SOF.11; Ex.42(19:18-20:24)]. And this is true in practice: when TLG tried to design a figurine that looks different from the Minifigure but works just as well, TLG recognized that ███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████.”    [Dkt.236.at.SOF.32;   Ex.23;

Ex.42(251:3-259:7)].

The precision with which TLG designed the Minifigure, including its various

component parts, allows for limitless play possibilities and interconnections with

other elements in the play system, as exemplified by the creations below from TLG's

expert Lee Loetz ([Dkt.312.at.Ex.B (¶17)]):



### 2.    TLG's Asserted Rights In The Minifigure

To protect the Minifigure's functionality, TLG obtained utility patents

covering:  (1) the "stud" on top of the head; (2) the "c-cup" hands; (3) a particular

"leg assembly"; and (4) the sizes and proportions of the Minifigure (as identified in

the patents as variable "m").    [Dkt.236.at.SOF.12; Dkt.239.at.Exs.11-13].    In

anticipation of the expiration of its utility patents in 1994—a full 16 years after TLG

released (or "published") the Minifigure in 1978—TLG belatedly applied to register

copyrights in certain Minifigures.  [Dkt.236.at.SOF.34-36; Dkt.239.at.Exs.25-28].

TLG asserts two copyright registrations against Zuru:  (1) "Basic Minifigures"

(Reg. No. VA0000655104); and (2) "Figure with Brown Hair" (Reg. No.

VA0000655230).  [Dkt.236.at.SOF.34; Dkt.239.at.Exs.25-28].[2]  The deposit photos

TLG submitted with its asserted copyrights are below ([Dkt.239.at.Exs.25, 28]):

| Basic Minifigure | Figure With Brown Hair |
|---|---|
|  | |

TLG also asserts one trade-dress registration against Zuru, from 2016 (Reg.

No. 4,903,968).  [Dkt.243-7].  TLG described the trade dress as applying to:

> [T]he three-dimensional configuration of a toy figure featuring (1) a
> cylindrical head, (2) on top of a cylindrical neck, (3) on top of a
> trapezoidal torso of uniform thickness, with flat sides and a flat back,

---

[2]  TLG limited its "Figure with Brown Hair" registration to the "hair decoration" of the Minifigure in the deposit copy.  [Dkt.239.at.Ex.28].  TLG has never asserted (nor could it) that Zuru's figurines copy that "hair decoration."  TLG thus has no basis to assert that registration against Zuru.

14

(4) where arms are mounted slightly below the upper surface of the torso, (5) on top of a rectangular plate, (6) on top of legs which bulge frontwards at the top and are otherwise rectangular with uniform thickness, (7) on top of flat square feet.

[Dkt.243-7].

### 3. TLG's Admissions About The Limited Scope Of Its Asserted Minifigure Rights

It is undisputed that upon the expiration of TLG's Minifigure utility patents, any competitor of TLG became free to make a figurine that matches the functionality of the Minifigure, including its "perfect fit" within the play system. [Dkt.236.at.SOF.42, Ex.39(125:3-128:5); Ex.41(71:7-12); Ex.43(132:9-133:16, 139:7-25, 147:15-148:10, 150:19-151:4, 151:19-23)]. Thus, any copyright or trade-dress protection TLG could have in the Minifigure is necessarily ***extremely thin***, limited to essentially identical figurines. And TLG's own admissions prove it.

In prior litigation, also in the District of Connecticut, TLG asserted the same Minifigure copyrights against a lego-compatible figurine designed by a competitor called Best Lock. *See Lego A/S v. Best-Lock Constr. Toys, Inc.*, No. 3:11-cv-01586 (D. Conn.) ("*Best-Lock*"). The body shape of the Best Lock figurine was identical to the Minifigure—it had all the same "essential characteristics" ([Dkt.253.at.Ex.1(p.11); Ex.2(49:12-50:11)]):

15

***Best Lock***  ***TLG Minifigure***



Best Lock challenged the validity of the Minifigure copyrights on the grounds the Minifigure is a "useful article" and thus unprotectable. 17 U.S.C. § 101. TLG defended the validity of its copyrights by arguing that features of the Minifigure it claimed were protected by copyright are "sculptural" and not "functional," because they can be designed to look different while maintaining their functionality and compatibility with the play system. [Dkt.253.at.Ex.2(pp.48-50)]. To prove the point, TLG relied on two competitor figurines—Hasbro's "Kre-O" figurine and the "Mega Blocks" figurine—that TLG represented were "***different expressions***" of a lego-compatible figurine that do ***"not capture the overall look and feel of the Minifigure Copyrights."*** [Dkt.236.at.SOF.46; Dkt.239.at.Ex.2(pp.67-71); Dkt.253.at.Ex.1(p.19)]. TLG presented the following photo to the court, with Mega Blocks on the left and Kre-O on the right, each attached to a lego "base plate" in a seated position ([Dkt.253.at.Ex.1(p.20)]):

16

***Mega Bloks***     ***Hasbro Kre-O***



When TLG presented this image, it represented to the court that the protection afforded by its asserted Minifigure copyrights is limited:

> And what you have before you, Your Honor, are two different companies [Mega Bloks and Hasbro] who use their own expression of a similar idea. ***LEGO is not claiming the idea of a little man. LEGO is not in its copyright claiming the idea of a figurine. And it's not even claiming in its copyright the idea of a figurine that can connect to a base plate or that can be used as a block. It is claiming its own particularized expression of that idea.***

[Dkt.253-2.at.48-50] (emphasis added).

The district court asked TLG why it was suing Best Lock but not the makers of the Kre-O and Mega Bloks figurines, even though all the figurines "look so much alike." [Dkt.253.at.Ex.2(p.69)]. TLG responded, with reference to the Kre-O figurines: "the answer, Your Honor, is because ***[the Kre-O figurines] are not identical***. They … are a particularized expression of an idea and that is different from" the Minifigure, with "different geometries, different proportions" and a "different expression." [Dkt.253.at.Ex.2(p.48)]. TLG stated it was not asserting

infringement against the Mega Bloks figurine for "the same reason"—that is, because "the overall look, feel, shape of the MEGA figurine is a different expression. … [Y]ou couldn't put them both in the **same mold** and come out with the **same exact dimensions and geometry** with MEGA as you can with Best-Lock and with the LEGO protected copyright in the toy sculpture." [Dkt.253.at.Ex.2(pp.69-71)] (emphasis added).

TLG went so far as to laud the makers of the Kre-O and Mega Bloks figurines for using their "creative abilities to come up with their own particularized expression of an idea" ([Dkt.253.at.Ex.2(pp.49-50)]), and pointed to those figurines to demonstrate "how easy it would be" for any other competitor to create "non-infringing figurines that maintain their functionality" ([Dkt.239.at.Ex.3 n.10]).

The *Best-Lock* court relied on TLG's representations to find that certain features of the Minifigure were "protectable" by copyright because the Kre-O and Mega Bloks figurines accomplished similar functionality with what TLG admitted (and the court agreed) were different designs. *Best-Lock*, 874 F. Supp. 2d 75, 100-02 (D. Conn. 2012) ("*Best-Lock I*"). For example, the court found the "trapezoidal shape" of the torso of the Minifigure to be "sculptural," and thus protectable, because "the Mega Bloks and KRE-O minifigures … accomplish the same purpose with roughly square torsos." *Id.* at 101. Similarly, it found that "square feet" are a

18

"sculptural" feature because the "Mega Bloks minifigures, in keeping with their overall rounded form, have feet that are rounded at the front." *Id.* at 102.

On the other hand, the court concluded that the "size and dimensions" of the Minifigure were "functional," and unprotectable, because all lego-compatible figurines "must have these elements so that they can be used in combination with blocks and base plates." *Id.* It also found the "proportions" of the figurines to be at least "partly functional" because "the relative proportions of the pieces of each" figurine under consideration—including the "head, torso, and legs—are either identical or nearly identical," and "the legs, at least, must be the same size to attach horizontally (as well as vertically) to the base plate." *Id.* The court also concluded that "basic features" of the human body (*e.g.*, heads, necks, shoulders, arms) "constitute unprotectable 'ideas' of the human form in the abstract." *Best-Lock*, 404 F. Supp. 3d 583, 614 (D. Conn. 2019) ("*Best-Lock II*").

Having determined on the record before it that TLG's asserted Minifigure copyrights were at least partially non-functional, and thus not invalid entirely, the district court granted summary judgment to TLG on the issue of copyright infringement by the identical Best Lock figurines. *Id.* at 616.

## B. Zuru's First- and Second-Generation MAX Figurines

Zuru is a toy company formed in New Zealand in 2003 by three siblings and remains a family-owned business. [Dkt.236.at.Ex.36]. In November 2017, the

world's largest retailer, Walmart, asked Zuru to develop a "██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████" [Dkt.236.at.SOF.44; Ex.10]

(emphasis added). It is undisputed that there was nothing wrong, or unlawful, about Walmart making this request or Zuru attempting to comply with it. [Dkt.236.at.SOF.42; Ex.39(125:3-128:5); Ex.41(71:7-12); Ex.43(132:9-133:16, 139:7-25, 147:15-148:10, 150:19-151:4, 19-23); Dkt.267.at.Ex.57(pp.69-70)].

In October 2018, Zuru introduced its "MAX" brand of construction toys, including a plastic, lego-compatible figurine available exclusively at Walmart. [Dkt.267.at.RSOF.19]. Below is an image of a Zuru "First-Generation Figurine" beside two Minifigures ([Dkt.305 (¶5)]):

*TLG Minifigure*   *TLG Minifigure*   *Zuru 1st Gen.*

 

Zuru's First-Generation Figurines had the same basic human body parts as the Minifigure and shared similar sizes and proportions for sake of achieving Walmart's goal of "███████████████████████." [Dkt.236.at.SOF.44; Ex.10]. Zuru's figurines also had similar "c-cup" hands and a "stud" on the top of the head, which TLG agrees are functional features of the Minifigure. [Dkt.324.at.21]. But Zuru's figurines otherwise lacked the Minifigure's "essential characteristics," such as a trapezoidal torso and rectangular legs.

In October 2019, Zuru introduced a "Second-Generation Figurine," shown below beside two Minifigures ([Dkt.305 (¶9)]):



***TLG Minifigure***          ***TLG Minifigure***          ***Zuru 2d Gen.***

While maintaining the same humanoid body parts and similar overall sizes and proportions to continue to facilitate fit and function in TLG's play system, Zuru: (1) redesigned the head with a rounded "chin" and no "stud" on the top (avoiding another Minifigure "essential characteristic"); (2) angled the arms outward as compared to the Minifigure's inward angle; (3) narrowed the waist, further

distinguishing it from the Minifigure's pudgy "trapezoid"; and (4) made the legs and feet more rounded and tapered, which again further avoided the Minifigure's "essential" squares and rectangles.

### C.    TLG's Lawsuit Against Zuru

#### 1.    The 2019 Preliminary Injunction And Contempt Order

In December 2018, TLG sued Zuru for infringement of the asserted Minifigure copyrights and trade dress, as well as design-patent infringement (and other claims) relating to certain TLG "bricks." [Dkt.1]. The day after the suit was filed, the district court entered a TRO barring Zuru from selling the First-Generation Figurines. [Dkt.19].

In July 2019, the Court entered a preliminary injunction prohibiting Zuru from:

> [m]anufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of products, including the [First-Generation Figurines], containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks.

[Dkt.87.at.2] ("Preliminary Injunction").[3]

---

[3]    After the district court entered a preliminary injunction in July 2019, Zuru appealed that order to the Federal Circuit because, at that time, TLG had not yet abandoned its claim of design-patent infringement. *Lego A/S v. Zuru Inc.*, 799 F. App'x 823 (Fed. Cir. 2020). *See infra* Part I.A.

In November 2019, the district court found Zuru in contempt of the Preliminary Injunction based on its sales of the Second-Generation Figurines. [Dkt.139] ("Contempt Order"). As part of its ruling, the court modified the Preliminary Injunction to provide that, for the duration of the case, Zuru must file a notice with the court at least 30 days before selling any figurine in its MAX product line to "allow sufficient time for the court to receive and act on any application for a temporary restraining order" that TLG might choose to file. [Dkt.139.at.28-29]. The court noted that such a requirement could benefit Zuru by "avoid[ing] a situation where [Zuru] develops a new figurine [TLG] agree[s] is non-infringing, but [Zuru] nevertheless has to wait for approval from the court." [Dkt.139.at.27].

### 2. Discovery And The Unresolved 2022 Summary Judgment Motions

Early in the case, TLG agreed to abandon its claims for design-patent infringement relating to certain TLG "bricks." *See infra* Part I.A. The parties agree that, since then, TLG's only operative claims in this action are for copyright and trade-dress infringement relating to the Minifigure body form.

During discovery, Zuru obtained extensive evidence from TLG that substantially discredited the positions TLG took at the earlier preliminary injunction phase. For example, despite asserting in the injunction phase that the Minifigure is "not functional" ([Dkt.47-5 (¶57)]), TLG later produced its "Minifigure Guidelines" in which, as noted (*supra* 11-12), TLG admits the Minifigure has █████████

23

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████ ([Dkt.236.at.SOF.9; Ex.17(p.53); Ex.42(76:4-

77:13); Ex.44(276:20-278:20); Dkt.236.at.SOF.25; Ex.43(169:24-170:16);

Ex.44(279:4-280:25)]).

Zuru also deposed: (1) TLG's most senior Minifigure designer, who testified

████████████████████████████████████████████████

███████████████ ([Dkt.236.at.SOF.11; Ex.42(14:5-15:18, 16:17-18:2, 19:18-

20:24)]); and (2) TLG's toy-design expert Elizabeth Knight, on whose opinions the

district court substantially relied in granting the Preliminary Injunction. Ms. Knight

admitted at deposition that she did nothing to ensure her similarity opinions were

premised on protectable features of the Minifigure. [Dkt.236.at.SOF.51;

Ex.44(12:14-20, 203:5-18, 207:5-11)]. To the contrary, she admitted that, in

rendering her opinions that the First- and Second-Generation Figurines have the

same overall look and feel as the Minifigure, the "proportions" of the parties'

figurines—which she described as the "relationship of height to width to depth"—

were the "most important" consideration to her. [Dkt.236.at.SOF.52; Ex.44(258:20-

259:4, 263:2-8, 264:4-10)].

In March 2022, the parties filed cross-motions for summary judgment on

TLG's copyright and trade-dress claims relating to Zuru's First- and Second-

Generation Figurines. [Dkts.237-243]. The court held a hearing on those motions in February 2023. [Dkt.295]. More than two years after the parties filed the motions, they remain under submission.

### 3. The Proceedings On Zuru's Third-Generation Figurines

#### a. Zuru's Notice Of Its Third-Generation Figurines

In November 2023, after being enjoined from selling figurines for more than four years, Zuru provided notice to the district court and TLG pursuant to the Contempt Order of its intent to sell one or more of ten versions of its newly designed Third-Generation Figurines. [Dkt.305-305-1] ("Notice"). Zuru included detailed information about the Third-Generation Figurines. [Dkt.305 (¶¶14, 18)]. Zuru also confirmed it would not market or sell the redesigned figurines until at least 30 days after the date of the Notice, so that TLG would have time to seek a TRO if it deemed necessary. [Dkt.305.at n.1].

In its Notice, Zuru included the following images of its proposed Third-Generation Figurines (in gold), next to a Minifigure (in gray) ([Dkt.305.at.4]):

25



Zuru also included photos of prototypes of decorated versions of all ten Third-Generation Figurines next to a Minifigure, reflecting a variety of different particularized expressions of body shapes and proportions ([Dkt.305.at (¶14)]), as shown in the examples below of Versions 1 and 7:



b.    **TLG's Motion To Enjoin The Third-Generation Figurines**

TLG thereafter filed an Emergency Motion for Temporary Restraining Order ("TRO Motion") in which it "moved for a [TRO] restraining [Zuru] from manufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of the ten figurines proposed by Zuru … and confirming that the Proposed Figurines are subject to the Preliminary Injunction as set forth in the Contempt Order." [Dkt.306.at.1]. In support, TLG simply averred that ***all ten*** Third-Generation Figurines "are substantially and confusingly similar to the Asserted Copyrights and Asserted Trademark such that they are enjoined by the existing Preliminary Injunction." [Dkt.307.at.7].

TLG did not distinguish among any of the ten Third-Generation Figurines, did not explain ***why*** or ***how*** they are substantially or confusingly similar, and did not offer any expert analysis or rely on any evidence from the extensive discovery record. Rather, TLG simply stated its conclusion that "a visual comparison of the Proposed Figurines and the Minifigure figurine demonstrate the overwhelming similarity." [Dkt.307.at.13]. TLG included comparisons of the undecorated Minifigure (in blue) to each Third-Generation Figurine (in gray), as shown below from front and back views ([Dkt.307at.13-16]):

27







In response, Zuru demonstrated—relying on evidence developed during discovery and the expert opinions of toy designer Mr. Loetz that were specific to the Third-Generation Figurines—that apart from sharing the same **unprotectable** basic human body form, and having similar sizes and proportions, the Third-Generation Figurines are dissimilar to the Minifigure. [Dkt.312.at.23-29]. For example, there are **no similarities** between the shapes of each corresponding component of the parties' respective figurines (heads, torsos, legs/feet), other than that they depict the same basic human-body parts (and excluding the "c-cup" hands that TLG admitted are functional and unprotectable, [Dkt.324.at.21]):



Zuru also showed that each Third-Generation Figurine is more different from any potentially protectable features of the Minifigure (*e.g.*, particular shape of torsos, arms, legs, feet) than: (1) the Kre-O and Mega Bloks figurines TLG conceded are "***different expressions***" of the idea of Minifigure; and (2) an alternative version of TLG's "Friends" figurine that it similarly described as having "***entirely different sculptural features***" to the Minifigure ([Dkt.312.at.Ex.B (¶¶43-50)]):



Zuru also demonstrated the greater distinctiveness of the Third-Generation Figurines by replicating the (flawed) "color overlay" analysis that TLG's expert, Ms. Knight, had used at the preliminary-injunction stage to support her conclusion that Zuru's First- and Second-Generation Figurines were supposedly "indistinguishable" from the Minifigure. [Dkt.312.at.Ex.B (¶¶51-57); Dkt.137.at.122-125, 153]. While

Ms. Knight's overlay approach is inherently unreliable because it fails to account for unprotectable features of the Minifigure, Zuru nonetheless replicated the approach to show that, under TLG's own method, Zuru's figurines are more different from the Minifigure than the "different expression" Kre-O figurines, exemplified by the extra "negative space" visible in the images below of two Zuru figurines overlaid on the Minifigure ([Dkt.312.at.Ex.B (¶¶51-57)]):

### Outlines of Zuru, Kre-O, and Minifigure Figurines



### Overlays of Zuru and Kre-O Figurines on Top of Minifigure

Finally, Zuru showed that the design changes it made to the Third-Generation Figurines impacted their functionality and compatibility, such that any further changes would render its figurines non-functional or unrecognizable as a human form. For example, Zuru made the waists of certain figurines so narrow, and the legs so tapered and rounded, that the backs of the legs could not accommodate any

"holes" to permit attachment to studded bricks in a seated position, as exemplified in Version 7 ([Dkt.307.at.15-16; Dkt.312.at.Ex.B (¶24)]):[4]



| TLG Minifigure | Zuru 3d Gen. v.7 |
|---|---|

### c. The Order Enjoining The Third-Generation Figurines

At the hearing on the TRO Motion, the district court stated that rather than decide whether to grant a TRO against the Third-Generation Figurines, it instead would decide "whether the proposed redesigned products were covered by the [existing] injunction or not." [Dkt.347.at.18]. At the hearing, the court made no findings about whether, or why, the Third-Generation Figurines are likely to infringe the asserted Minifigure copyrights or trade dress.

In its February 29, 2024 written Order following the hearing, the district court provided only a single conclusory sentence on the merits of TLG's motion: "The

---

[4] Zuru also argued below, as it did on summary judgment, that TLG's asserted copyrights and trade dress are invalid for multiple reasons, including functionality, fraud on the Copyright Office, and failure to publish with the requisite copyright notice. [Dkt.312.at.14-23]. Zuru preserves those arguments for appellate review at a later stage.

Proposed Figurines are subject to the Preliminary Injunction Order." [Dkt.344.at.4]. The court denied the TRO Motion "as moot because there was and is no need to issue one." [Dkt.344.at.4]. Moreover, as a veiled warning to Zuru to discourage it from proposing further redesigns, the court "reserve[ed] ruling on [TLG's] request for costs and fees associated with the instant motion." [Dkt.344.at.4]. Zuru thus has no idea why its Third-Generation Figurines are enjoined, or what it could do to fairly compete against TLG.

This timely appeal followed. [Dkt.350].

## SUMMARY OF ARGUMENT

The Order enjoining Zuru from selling any of its ten redesigned Third-Generation Figurines for the duration of this case contravenes this Court's long-settled precedents establishing the limited scope of copyright and trade-dress protection.

**I.** This Court has jurisdiction over this appeal. This Court, as the appropriate regional circuit, has jurisdiction because TLG voluntarily abandoned the design-patent claims it previously asserted, depriving the Federal Circuit of appellate jurisdiction. Further, the district court's Order represents at least a "modification" of the prior preliminary injunction (if not an entirely new injunction), because it expanded the terms and force of the injunction by enjoining Zuru from selling entirely new figurines that have no similarities to any ***protectable*** expressions of the

34

Minifigure and altered the relationship between the parties by effectively preventing Zuru from even seeking approval to sell redesigned figurines.

**II.** On the merits, the district court erred in enjoining all ten Third-Generation Figurines for the duration of this case where none is likely to infringe any asserted copyright or trade-dress rights in the Minifigure. Zuru studiously designed the Third-Generation Figurines to avoid any similarities to any arguably ***protectable*** features of the asserted Minifigure copyrights or trade dress; the particularized expressions of all such features—heads, torsos, arms, legs, feet—are different in Zuru's redesigns. The only conceivable similarities are in legally unprotectable elements, such as the "idea" of a "little-man" figurine, the basic human body form, or features of the Minifigure that contribute to its fit and functionality in the TLG play system. TLG cannot exclude competitors from selling "little man" figurines that fit and function as well as the Minifigure. TLG previously recognized the narrow scope of its rights when it admitted that other alternatively designed figurines are non-infringing, "different expressions" of the idea of the Minifigure. So too are Zuru's Third-Generation Figurines. By barring Zuru's figurines without any findings, reasoning, or explanation, the Order misapplied settled copyright and trade-dress law.

**III.** Although the Court need not reach the remaining requirements for injunctive relief, those factors also favor Zuru and its right to compete fairly against

TLG.  The district court disregarded these factors too, which provides independent grounds for reversal.

IV.   Should this Court determine it requires additional findings and reasoning from the district court to discern the basis for the Order, then, as an alternative to reversing, the Court should vacate and remand for such findings and reasoning, while providing guidance to the court on the governing legal standards.

## STANDARD OF REVIEW

This Court reviews the grant or modification of a preliminary injunction for abuse of discretion.  *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (grant); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (modification).  "Under abuse of discretion review, the factual findings and legal conclusions underlying the district court's decision are evaluated under the clearly erroneous and *de novo* standards, respectively."  *Oneida Nation*, 645 F.3d at 164 (quotations omitted).  "A court abuses its discretion where it applies an incorrect legal standard or bases its ruling on clearly erroneous findings of fact."  *Weight Watchers*, 423 F.3d at 141 (quotations and internal citations omitted).

"[W]here the grounds for a district court's decision are unclear, a remand for clarification is appropriate."  *Cohen v. FB Air, Inc.*, 995 F.2d 378, 379-80 (2d Cir. 1993).

# ARGUMENT

## I.  THIS COURT HAS JURISDICTION OVER THIS APPEAL

Zuru brings this appeal pursuant to 28 U.S.C. § 1292(a)(1), which provides appellate courts with jurisdiction over appeals from "[i]nterlocutory orders of the district courts … granting, continuing, modifying, refusing or dissolving injunctions."  Because the district court at least modified an existing injunction, this Court has jurisdiction to hear this appeal.

### A.  This Court Is The Proper Circuit For This Appeal

At the outset, and for avoidance of doubt, this Court has jurisdiction over this appeal because it arises from an order of a district court located in this Circuit and the exception for patent cases does not apply.  *See* 28 U.S.C. § 1294(1).

The Federal Circuit has exclusive jurisdiction where an action "arises under" patent law, such as when a complaint pleads a patent infringement claim.  *See, e.g.*, *Hudson Furniture, Inc. v. Lighting Design Wholesalers Inc.*, 2021 WL 6105489, at *1-2 (2d Cir. Dec. 21, 2021) (summary order) (citing 28 U.S.C. §§ 1292(a)(1), 1292(c)(1), 1295(a)(1)).  Where, however, a party voluntarily ***abandons*** a patent claim, by either actually or constructively amending its pleading, a later appeal is to the appropriate regional circuit, not the Federal Circuit.  In *Predator International, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177 (10th Cir. 2015), for example, the Tenth Circuit determined it had jurisdiction over an appeal where the complaint initially contained a patent claim because "at the time of [defendant's] notice of

appeal, the most recent complaint was [plaintiff's] fourth amended complaint …
which did not contain a patent-infringement claim." *Id.* at 1180-81. Likewise, in
*Inter Medical Supplies, Ltd. v. EBI Medical Systems, Inc.*, 152 F.3d 941, 1998 WL
130466 (Fed. Cir. 1998) (unpublished), the Federal Circuit transferred an appeal to
the Third Circuit, explaining that "[a]lthough Orthofix's complaint alleged a claim
for patent infringement, Orthofix dropped that claim before trial," such that "[t]he
complaint may be deemed constructively amended by Orthofix's voluntary
abandonment of the patent claim before trial." *Id.* at *2.

As Justice Stevens explained when noting that an appellate court's jurisdiction
is "fixed" at the time the notice of appeal is filed:

> [I]f a case began as an antitrust case, but an amendment to the complaint
> added a patent claim that was pending or was decided when the appeal
> is taken, the jurisdiction of the district court would have been based "in
> part" on 28 U.S.C. § 1338(a), and therefore § 1295(a)(1) would grant
> the Federal Circuit jurisdiction over the appeal. Conversely, ***if the only
> patent count in a multicount complaint was voluntarily dismissed in
> advance of trial, it would seem equally clear that the appeal should be
> taken to the appropriate regional court of appeals rather than to the
> Federal Circuit.***

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 835 (2002)
(Stevens, J., concurring in part and concurring in the judgment) (emphasis added);
*see also Predator Int'l*, 793 F.3d at 1181 ("[l]ater events" such as "mootness" can
deprive Federal Circuit of jurisdiction) (citing, *e.g.*, *Winsness v. Yocom*, 433 F.3d

727, 736 (10th Cir. 2006), for proposition that affidavits disavowing intent to prosecute "have rendered the controversy moot").

In this case, TLG voluntarily abandoned its patent claim years ago, thus constructively amending its complaint and depriving the Federal Circuit of jurisdiction. When the parties filed their motions for summary judgment in March 2022, both represented that TLG had voluntarily abandoned its patent claim. As TLG put it: " ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ " [Dkt.246.at.1 n.1]. Zuru stated similarly: "[T]he parties have resolved all Lego's claims for design patent infringement involving 'brick' designs …. At present, the only claims that remain are Lego's claims for copyright and trademark infringement relating to its minifigure …."). [Dkt.236.at.9]. TLG's affirmative representation to the district court in 2022 that it voluntarily is no longer pursuing its patent claim means this Court has appellate jurisdiction.

Should this Court disagree, however, it should follow its usual course of transferring this appeal to the Federal Circuit. When this Court finds it lacks jurisdiction, it is to "consider whether transfer 'is in the interest of justice' and whether the 'appeal could have been brought [in the transferee court] at the time it was filed or noticed.'" *Hudson Furniture*, 2021 WL 6105489, at *2 (quoting 28

U.S.C. § 1631). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Hendrickson v. United States*, 791 F.3d 354, 363 (2d Cir. 2015) (quotations omitted). If this Court determines the Federal Circuit has exclusive jurisdiction, then Zuru necessarily could have brought the appeal in the Federal Circuit. In such circumstances, this Court transfers appeals. *See, e.g.*, *Hudson Furniture*, 2021 WL 6105489, at *2 (transferring to Federal Circuit); *Amperion, Inc. v. Current Grp., LLC*, 444 F. App'x 477, 479 (2d Cir. 2011) (same).

## B.     The Order Is Appealable Under 28 U.S.C. § 1292(a)(1) Because It Grants Or Modifies An Injunction

This Court has appellate jurisdiction over interlocutory orders "granting" or "modifying" injunctions. 28 U.S.C. § 1292(a)(1). An order "interpreting" a preliminary injunction, however, is not appealable as of right. *Weight Watchers*, 423 F.3d at 141. "Whether an order interprets or modifies an injunction is determined by its actual effect." *Id.* A modification "alters the legal relationship between the parties, or substantially changes the terms and force of the injunction." *Id.* at 141-42 (quotations omitted, cleaned up).

This Court applies *de novo* review "[i]n distinguishing interpretation from modification." *In re Tronox Inc.*, 855 F.3d 84, 98 (2d Cir. 2017). It is to consider whether the district court made "an obvious misinterpretation of the terms of an injunction," which "constitutes a modification within the meaning of § 1292(a)(1)."

40

*Scipar, Inc. v. Simses*, 354 F. App'x 560, 562 (2d Cir. 2009) (summary order); *see also, e.g.*, *In re Tronox*, 855 F.3d at 98 (if court "properly construed the Injunction to bar [plaintiffs'] claims, she did not modify it; but if she erred in her construction, she did modify it"). The Court will not "elevate form over substance to preclude [defendant] from appealing an order that was clearly—and newly—adverse to its interests." *Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, 523 F. App'x 756, 759 (2d Cir. 2013); *see In re Tronox*, 855 F.3d at 97-98 ("Though the order did not purport to modify the Injunction, we do not simply take the District Court's word for it.").

This Court's determination of whether a district court modified or clarified an earlier injunction is inextricably tied to an assessment of the underlying merits. *See, e.g.*, *In re Tronox*, 855 F.3d at 99 ("The merits of New Kerr-McGee's enforcement claims are therefore unavoidably linked to the jurisdictional question."); *Wilder v. Bernstein*, 49 F.3d 69, 72 (2d Cir. 1995) ("[T]o determine whether the ruling modifies the Decree, we must assess its merits because if the Judge correctly construed the Decree, he did not modify it, but if he erred in his construction, he did modify it."). Thus, "[t]o resolve this jurisdictional issue, [the Court] must consider the merits of the issue defendants seek to appeal." *E.E.O.C. v. Loc. 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 79 (2d Cir. 1996).

Here, an assessment of the merits confirms (*see infra* Parts II-III) that the Order operates as a modification of the prior Preliminary Injunction, if not a new injunction, affording the Court jurisdiction over this interlocutory appeal.

***First***, the Order "substantially chang[ed] the terms and force of" the Preliminary Injunction by extending its scope to include ***any*** figurine that approximates the (unprotectable) fit and functionality of the Minifigure, no matter how different the figurine is with respect to the Minifigure's potentially protectable "design" features. *Weight Watchers Int'l*, 423 F.3d at 142. In designing the Third-Generation Figurines, Zuru made legally significant changes to the earlier versions of its figurines, particularly in light of the limited design space it had to work with given its need to ensure its new figurines could fit and function within the play system while still being fun, appealing toys. *See infra* Part II. As noted, Zuru's redesigned figurines look ***more*** different from the Minifigure than other figurines TLG admits are non-infringing "different expressions." *See supra* 15-19 (TLG admissions). By nevertheless enjoining all ten Third-Generation Figurines, the Order substantially expanded the original Preliminary Injunction to encompass figurines that are similar to the Minifigure ***only*** with respect to unoriginal basic human forms and unprotectable fit and functionality.

To be sure, the original Preliminary Injunction barred Zuru from manufacturing or selling figurines that are "substantially or confusingly similar" to

the Minifigure. [Dkt.87.at.2]. But those terms of art from copyright and trademark law must be given their legal meanings because otherwise TLG could bar Zuru from selling non-infringing figurines—*i.e.*, figurines that are "substantially or confusingly similar" to the Minifigure in a purely lay rather than legal sense.[5] In *Silverman v. CBS Inc.*, 870 F.2d 40 (2d Cir. 1989), for example, even though the district court initially enjoined the defendant from creating or distributing "any musical play … containing any substantial copy" of the plaintiff's work, *id.* at 45, this Court held that the injunction was necessarily limited to the work's ***protectable*** elements:

> What the injunction should prohibit is copying any of the ***protectable elements*** of the works in which CBS holds valid copyrights. …
>
> Framing an injunction in terms of a legal conclusion concerning protectable increments of expression is not entirely satisfactory, but the alternative of trying to identify at this stage every protectable element of the copyrighted materials is even less satisfactory. Precise determination of such elements will have to await the situation, should it ever arise, where Silverman prepares a script that arguably infringes a protectable element of these materials and CBS asserts a claim of infringement.

*Id.* at 51 (emphasis added).

Just as in *Silverman*, to determine whether the Third-Generation Figurines are "subject to" the Preliminary Injunction, the district court had to determine if they

---

[5] Zuru does not challenge the earlier Preliminary Injunction here; rather, Zuru's position is that even assuming the Preliminary Injunction is properly limited to the protectable—*i.e.*, original and non-functional—aspects of TLG's asserted copyright and trade-dress rights, the Order is not.

"arguably infring[e] a protectable element" of TLG's asserted Minifigure copyright or trade-dress rights. *Id.* A ruling that Zuru's figurines are "subject to" the Preliminary Injunction based on similarities in unprotectable features necessarily represents a "substantial[] change[]" in "the terms and force of the injunction," *Weight Watchers Int'l*, 423 F.3d at 142, because it awards TLG rights that the original Preliminary Injunction did not provide (and that TLG is not entitled to have).

**Second**, the Order "alter[ed] the legal relationship between the parties" by not only enjoining ten new designs, but effectively preventing Zuru from even **attempting to** compete with TLG in the market for lego-compatible construction-toy figurines. *Weight Watchers Int'l*, 423 F.3d at 141. The prior Preliminary Injunction, as modified by the Contempt Order, explicitly **permitted** Zuru to attempt to compete by coming up with redesigns if Zuru complied with the notice requirement. This is consistent with the law, which "encourage[s]" even enjoined parties to compete. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 883 (Fed. Cir. 2011) (when assessing redesign, courts "take account of the policy that legitimate design-around efforts should always be encouraged as a path to spur further innovation").

Yet in stark contrast to the Preliminary Injunction, the new Order chills (if not outright prevents) Zuru from making any further **attempts to** compete: The Order not only enjoins the ten new redesigns (without any explanation as to how or why they are "subject to" the Preliminary Injunction), but also reserved ruling on whether

to require Zuru to pay TLG's costs and fees associated with the TRO Motion—as though Zuru had done something sanctionable simply by ***proposing*** new redesigns in strict compliance with the Contempt Order. TLG made no pretense of seeking a sweeping bar against Zuru's ability to compete when it proclaimed at the TRO hearing: "It shouldn't be disputed that Zuru is enjoined from ***coming up with*** new infringing figurines, right." [Dkt.347.at.5 (5:8-13)]. This is a far departure from what the Preliminary Injunction prohibited and amounts to a substantial (and erroneous) modification.

***Third***, the district court's changing of the enforcement mechanism in the Contempt Order independently constitutes a substantial modification of the Preliminary Injunction's terms and effect. The Contempt Order required Zuru to provide thirty days' notice of its intent to modify or sell redesigned figurines, and in exchange allowed TLG to file an application for a TRO and satisfy its concomitant burdens. [Dkt.139.at.26]. By discarding that previously ordered mechanism as "moot" ([Dkt.344.at.4])—including eschewing TLG's burden to show a likelihood of success on the merits of its infringement claims as to Zuru's redesigned figurines, and eliminating the mandatory requirements under Fed. R. Civ. P 65(c)-(d) that: (1) the court "state the reasons" for issuing the injunction; and (2) TLG post a sufficient bond—the court thus eased TLG's burden to obtain (and the court's burden to award) preliminary injunctive relief, altering the injunction's terms and the parties' legal

relationship.  *See, e.g.*, *ABC Corp. I v. P'ship & Unincorporated Ass'ns*, 51 F.4th 1365, 1373 (Fed. Cir. 2022) (order a "modification" of earlier injunction where court's failure to hold plaintiff to burdens previously required "changed this arrangement to make [plaintiff's] enforcement easier," constituting "a change in the legal relationship").

*Fourth*, in the alternative, the Order constitutes a wholly new injunction, which independently affords this Court jurisdiction. 28 U.S.C. § 1292(a)(1).  There are no claims or allegations in TLG's pleadings that Zuru's Third-Generation Figurines infringe the Minifigure.  TLG's potential success on the merits of its claims as to the First- and Second-Generation Figurines would not resolve whether the Third-Generation Figurines *also* infringe, and thus would not address whether an injunction against those figurines is appropriate (or whether Zuru had been wrongfully enjoined from selling them during the case).  *See, e.g.*, *Al-Bukhari v. Dep't of Corr.*, 720 F. App'x 655, 656 (2d Cir. 2018) (summary order) (affirming denial of preliminary injunction on independent ground that "[t]he claims of infringement that Al-Bukhari made in his motion do not appear in his underlying complaint"); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (preliminary injunction typically "seeks only to maintain the status quo pending a trial on the merits"); *cf. Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("Although these new assertions might support additional claims against the

same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."). It therefore is erroneous, and inapt, to simply sweep the new redesigns into the prior Preliminary Injunction; any injunction against the Third-Generation Figurines requires a *new* injunction.

Consistent with this, the most reasonable reading of the Contempt Order is that it provided a bespoke procedure for TLG to seek a new injunction against any proposed redesigned figurines by allowing TLG: (1) to move for a TRO; and (2) if the TRO were granted, to use that 14-day window, *see* Fed. R. Civ. P. 65(b)(2), to file new claims against those redesigned figurines—either by seeking to amend its current pleading (which TLG never did), or as part of a new lawsuit. Either way, TLG must seek a *new* preliminary injunction on those new claims, and satisfy its accompanying burdens specific to the redesigns. Because the district court effectively afforded TLG the benefits of a new injunction without requiring TLG to comply with this procedure, this Court may alternatively treat the Order as a new injunction for purposes of assessing jurisdiction.

## II. THE DISTRICT COURT ERRED TO THE EXTENT IT RULED THAT TLG IS LIKELY TO SHOW THAT ZURU'S THIRD-GENERATION FIGURINES ARE SUBSTANTIALLY OR CONFUSINGLY SIMILAR TO THE ASSERTED MINIFIGURE COPYRIGHTS OR TRADE DRESS

To enjoin Zuru from selling Third-Generation Figurines, it was TLG's burden to establish: "(1) irreparable harm and (2) either (a) a likelihood of success on the

merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party," and (3) "that a preliminary injunction is in the public interest." *Oneida Nation*, 645 F.3d at 164 (quotations omitted).[6] "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (quotations omitted).

Although the district court enjoined Zuru from selling any of the Third-Generation Figurines for the duration of this case, it offered no factual findings or legal conclusions about why it was doing so. To the extent the court did not make the determinations necessary to support injunctive relief, the Order has no basis and should be reversed. And, as discussed below, to the extent the court implicitly made those findings, it erred as a matter of law and thus abused its discretion.

---

[6] Although TLG filed an application for a TRO, the district court effectively imposed a preliminary injunction instead. In any event, "[i]n the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and temporary restraining orders." *Bragg v. Jordan*, 669 F. Supp. 3d 257, 266 (S.D.N.Y. 2023).

A. **There Is No Actionable Substantial Similarity Between The Third-Generation Figurines And The Asserted Minifigure Copyrights**

1. **The District Court Failed To Apply The Governing Legal Standard For Copyright Infringement**

At the outset, the district court (like TLG in its briefing below) did not acknowledge or apply the governing legal standard (or, indeed, any legal standard) regarding copyright infringement. That standard is rigorous with respect to a functional product configuration like the Minifigure.

To prevail on a claim for copyright infringement, TLG must show not merely that Zuru "copied" the Minifigure, but "must also show illegality, and this requires a sharper focus: ***the court must find a substantial similarity between the protectable elements of the two works***." *Best-Lock II*, 404 F. Supp. 3d at 608 (quoting *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)) (second emphasis in *Fisher-Price*). "That principle gives rise to the oft-stated rule that an infringement plaintiff 'must show that the defendant appropriated the plaintiff's particular means of expressing an idea, not merely that he expressed the same idea.'" *Id*. (quoting *Fisher-Price*, 25 F.3d at 123). Thus, TLG was correct to concede in *Best-Lock* that it is not entitled to claim copyright protection in "the idea of a little man," the "idea of a figurine," or "even … the idea of a figurine that can connect to a base plate or that can be used as a block." [Dkt.253.at.Ex.2 (48:17-24)]. Rather,

the most TLG can claim is thin protection over "*its own particularized expression of that idea*" in the Minifigure. *Id.*

Moreover, where a court compares "products that contain both protectible and unprotectible elements, our inspection must be 'more discerning'; we must attempt to extract the unprotectible elements from our consideration and ask whether the **protectible elements, standing alone**, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis in original); *see also Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 69 (2d Cir. 2010) ("we are called upon to determine whether defendants misappropriated the **protectible elements** of those designs"; "because plaintiffs have failed to allege that a substantial similarity exists between defendants' work and the **protectible elements** of plaintiffs', the district court properly dismissed plaintiffs' federal copyright claim") (emphasis added, quotations omitted) (cleaned up). "[W]hen one subtracts from a copyrighted object the unoriginal and unprotected elements, the copyright owner is 'left with *a thin copyright*, which protects only against virtually identical copying.'" *Best-Lock II*, 404 F. Supp. 3d at 614 (quoting *Satava v. Lowry*, 323 F.3d 805, 810-12 (9th Cir. 2003)).

This Court illustrated these principles in *Mattel, Inc., v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357 (2d Cir. 1983), where it affirmed the denial of a preliminary injunction in a copyright case involving "action figure toy dolls." As it explained:

Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose. The rendering of such an idea is not in itself protectable; *only the particularized expression of that idea*, for example, the particular form created by the decision to accentuate certain muscle groups relative to others, can be protected. In this case a lay observer would recognize certain differences in the way the two sculptors have created images of strength by overemphasizing certain muscle groups. Thus, *the district court reasonably found that the only parts of the dolls' bodies that constitute the protectable expression of an idea are not substantially similar*.

*Id.* at 360 (emphasis added, citation omitted). The images below highlight how the broad similarities in the "idea" of the works in *Mattel* were insufficient to support an infringement claim in light of differences in how the parties expressed that idea:[7]

| Copyrighted Mattel He-Man Figure | Accused Figure Found *Not* Substantially Similar | Accused Figure Found *Not* Substantially Similar |
|---|---|---|
|  |  |  |

Similarly, in the district court, TLG made no attempt to show it is likely to prove substantial similarity between the Third-Generation Figurines and any

---

[7]  In the court below, TLG did not dispute Zuru's stated understanding that these images are accurate depictions of the figurines at issue in *Mattel*.  [Dkt.312.at n.9].

***protected expressions*** in Minifigure. Indeed, TLG never even identified what the protected expressions of the Minifigure copyright are. This was a critical, and dispositive, omission because it is undisputed that the Minifigure has many features ***not*** protected by copyright that cannot, as a matter of law, support a finding of infringement.

For starters, TLG has no right to monopolize the common appearance and placement of the human body parts, including a rounded head on top of a rounded neck, with shoulders, bent arms, a torso, waist, legs, hands, and feet—as the *Best-Lock* district court already concluded. *See Best-Lock II*, 404 F. Supp. 3d at 614.

Further, it is undisputed that copyright law does not protect ***functional features*** of a product design, which here include ███████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████. [Dkt.236.at.SOF.9, Ex.17-LEGOGROUP0009979]. Indeed, TLG has admitted that, in addition to the functional c-cup hands and "stud" on the head, "the base of the feet, backside of the legs, ***and other elements that facilitate attachment are functional***." [Dkt.253.at.Ex.3(p.14)] (conceding "these are not the copyrighted elements that form the basis of LEGO's infringement claim"). Acknowledging the functionality of these features, TLG previously protected them with utility patents. [Dkt.236.at.SOF.12; Dkt.239.at.Exs.11-13]. In

addition, *Best-Lock I* correctly found that the "size and dimensions" of the Minifigure are also "functional" because all TLG-compatible figurines "must have these elements so that they can be used in combination with blocks and base plates." 874 F. Supp. 2d at 102.

In consideration of all the ***unprotectable*** features of the Minifigure, at best TLG is left with a very "thin" copyright. *Satava*, 323 F.3d at 810-12. In *Best-Lock*, TLG explicitly acknowledged as much when it told Judge Haight that, consistent with its narrow copyright rights, it was pursuing copyright infringement claims against the "identical" Best Lock figurines but not against other competitor figurines (Kre-O, Mega Bloks) that did not "copy every single element, every single dimension, every single geometric shape and the overall look and feel of LEGO's ***copyright protected expression***." [Dkt.253.at.Ex.2 (49:12-16)]. TLG conceded that under these standards, competitor figurines like the Kre-O and Mega Bloks are not infringing because they "***are not identical***" to the Minifigure, but rather "are a ***particularized expression of an idea and that is different from" the Minifigure***. [Dkt.253.at.Ex.2 (67:15-71:2)].

TLG made no attempt below to show it is likely to prove similarity based on the Minifigure's protected expression alone. Instead, TLG simply placed images of the parties' figurines side-by-side and repeated its conclusion that there is "overwhelming similarity"—nothing more. [Dkt.307.at.10-12, 13-16]. This was

insufficient as a matter of law because it did not show "a substantial similarity between the protectable elements of the two works." *Best-Lock II*, 404 F. Supp. 3d at 608; *see, e.g.*, *SMS Grp. Inc. v. Pharmaaid Corp.*, 2023 WL 6929653, at *5 (E.D.N.Y. Oct. 19, 2023) (denying preliminary injunction where plaintiffs "do not identify or explain what elements of the photographs are substantially similar; instead, they only include a 'side-by-side' comparison of the parties' respective photographs and make the conclusory assertion that 'the images are identical'").[8]

Indeed, TLG made no attempt to identify *any* similarity between the particularized expression of any protected elements of the parties' figurines, while at the same time it ignored the many obvious differences in how Zuru expressed the idea of a plastic, humanoid construction-toy figurine (*see infra* Part II.A.2). Despite these deficiencies in TLG's showing, the district court granted its requested injunction without any findings or reasoning. It was legal error for the court to award an injunction as to any, let alone all ten, of the Third-Generation Figurines when TLG made no effort to carry its burden of proof and the district court made no findings of substantial similarity.

---

[8] TLG argued in its reply below ([Dkt.324.at.17]) that even under the "more discerning observer test," the standard for assessing similarity requires a comparison of the "total concept and overall feel" of the works. But the very authorities on which TLG relied—*Knitwaves* and *Peter F. Gaito Architecture*—still require unprotectable features to be excluded from comparison. *See supra* 50.

### 2. Under The Proper Test For Copyright Infringement, Zuru's Third-Generation Figurines Are Not Infringing

Under the governing standard for assessing copyright infringement, there was no basis for the district court to enjoin Zuru from selling any of the Third-Generation Figurines because none is virtually identical, or even substantially similar, to the Minifigure. To the contrary, when the asserted Minifigure copyright is limited to its features potentially protected by copyright, there are ***no*** actionable similarities.

As noted, neither TLG nor the district court attempted to identify what the "copyright protected expression" of the Minifigure actually is. In *Best-Lock*, however—where TLG conceded that unprotected expression cannot form the basis for copyright infringement—TLG argued that the protectable features of the Minifigure are:

> (1) cylindrical shape of head, (2) curvature at the top and bottom of head, (3) cylindrical neck, which is slightly narrower than the head, (4) trapezoidal shape or [sic] torso, (5) torso which is wider at the bottom and narrower at the top, (6) square, block-like set of shoulders, (7) arms extending from upper side of trunk, slightly below where shoulder starts, (8) arms slightly bent at the elbows, and (9) square feet.

[Dkt.253.at.Ex.3(p.14)].

Some of these features are necessarily ***not*** protectable. For example, TLG cannot credibly contend it can protect (3) a cylindrical neck which is narrower than the head or (8) arms bent slightly at the elbow—these are basic features or common poses of the human form. *Best-Lock II*, 404 F. Supp. 3d at 614. Still other features—

55

*e.g.*, (1) a "cylindrical" head with (2) "curvature at the top and bottom"—are unprotectable as functional (if not also as basic human features) because these shapes are needed to facilitate attachment to construction-toy head accessories, as shown by the fact that even those figurines TLG identified as "different expressions" (*e.g.*, Kre-O, Mega Bloks) incorporate them.

Even assuming *arguendo* that the remaining features—"(4) trapezoidal shape or [sic] torso, (5) torso which is wider at the bottom and narrower at the top, (6) square, block-like set of shoulders, (7) arms extending from upper side of trunk, slightly below where shoulder starts, … and (9) square feet"—are protectable, ***none of the Third-Generation Figurines has these features***.  Zuru's expert, Mr. Loetz, explained this, including through the images below ([Dkt.312.at.Ex.B (¶¶8, 40-41)]):



By other metrics of comparison too, the Third-Generation Figurines are ***dissimilar*** to the Minifigure. For example, with the possible exception of the unprotectable "c-cup" hands, the Third-Generation Figurines do not include any of what TLG has identified as the "essential characteristics" of the Minifigure: the "shapes" of the head, torso, and feet. [Dkt.236.at.SOF.3, Ex.17-LEGOGROUP0009940, Ex.41(88:15-89:19); Ex.42(53:9-58:20, 65:10-66:16)]. As Zuru's expert Mr. Loetz showed ([Dkt.312.at.Ex.B (¶¶40-41)]), ***the <u>heads</u> are different*** (TLG—perfectly cylindrical with a "stud" on the top"; Zuru—oblong with a "chin," protruding ears, and no stud); ***the <u>torsos</u> are different*** (TLG—an angular trapezoid; Zuru—a variety of rounded, more human-like shapes, with the waist always more narrow than the shoulders); and ***the <u>feet</u> are different*** (TLG—square; Zuru—rounded). And to the extent TLG claims the rectangular shape of the legs of the Minifigure (distinct from the "square feet") as protectable, ***the <u>legs</u> are different*** (TLG—perfectly rectangular legs; Zuru—rounded, tapered legs that become wider as they approach the feet). *See also supra* 6 (chart summarizing differences).

Moreover, while the Minifigure has four "holes" on the backs of the rectangular legs that facilitate attachment to studded bricks in a seated position, Zuru's Third-Generation Figurines have at most ***two holes***, and some (Versions 7-10) have ***no holes*** because the shapes of the legs are simply too narrow to fit them. As Mr. Loetz explained ([Dkt.312.at.Ex.B (¶¶22-25)]), these "design" changes

resulted in a significant loss of functionality because the Zuru figurines do not attach securely (if at all) to bricks in a seated position, as shown below:

**_TLG Minifigure_**         **_Zuru 3d Gen. v.9_**         **_Kre-O_**



Because these changes impact functionality, TLG could not use its copyrights (or trade dress) to require Zuru to make those redesigns. Zuru voluntarily made these changes anyway to further differentiate its figurines from the Minifigure even more than necessary—yet TLG and the district court ignored them.

Further, while TLG describes its Minifigure as "broadly generic" and a "perfect blank canvas" to assume "any sort of character" ([Dkt.236.at.SOF.13, Exs.41-42, 44; Dkt.239.at.Ex.16(p.18-20); Ex.42(46:9-47:4); Ex.44(285:21-287:14); Dkt.239.at.Ex.16(p.18-20)]), the Third-Generation Figurines have a **_masculine persona_**—with broad shoulders, narrow waists, and muscular definition ([Dkt.312.at.Ex.B (¶35)]). In designing its figurines this way, Zuru sacrificed functionality (and increased costs) by preventing its figurines from assuming any

character imaginable (*e.g.*, police officer, wizard, Santa Claus, ballerina) by applying decorations to the same mold.

In the face of this overwhelming evidence showing the material ***dissimilarities*** between the Third-Generation Figurines and the Minifigure, TLG's ***only*** response was to criticize Zuru for allegedly just "shav[ing] off or add[ing] millimeters of plastic" from its prior versions. [Dkt.307.at.16]. But this argument says nothing about how Zuru's figurines actually look—let alone when compared to the Minifigure's allegedly protectable features—and makes little sense in the context of the parties' "miniature" figurines that, by definition, could not be adjusted by more than "millimeters" or they will cease to be compatible with the play system at all. [Dkt.312.at.Ex.B (¶¶24-25)]. TLG's argument is also belied by its own recognition that adjusting the size of the Minifigure by just a few millimeters results in a figurine that will either "████████████" or that "███████████████████████." [Dkt.312.at.Ex.B (¶¶20, 40); Dkt.236.at.SOF.32; Exs.23.at.LEGOGROUP0004825, Ex.42(251:3-259:7)]. The district court thus erred to the extent it (silently) relied on this argument.

### 3. The District Court Disregarded TLG's Admissions Of Non-Infringement

TLG did not dispute below, and the district court never addressed, that the Third-Generation Figurines are at least as different from the Minifigure as others that TLG has lauded for being functional, lego-compatible figurines that look

***different from*** the Minifigure. In particular, TLG has identified the alternatively

designed figurines shown below as (1) "different expressions" of a figurine that do

"***not capture the overall look and feel of the Minifigure Copyrights***" as to the Kre-

O and Mega Bloks ([Dkt.236.at.SOF.46; Dkt.239.at.Ex.2(p.67-71);

Dkt.253.at.Ex.1(p.19)]); and (2) as having "***entirely different sculptural features***"

as to the TLG Friends prototype ([Dkt.312.at.Ex.B (¶¶43, 56-57)]):



| **Minifigure** | *Non-Infringing* **Kre-O** | *Non-Infringing* **Mega Bloks** | *Non-Infringing* **Friends** | *Accused* **Zuru 3d Gen. v.7** |
|---|---|---|---|---|

As Mr. Loetz explained ([Dkt.312.at.Ex.B (¶¶45-54)]) and TLG did not

dispute, every feature of the Third-Generation Figurines is at least as different from

the Minifigure as these admittedly "different" designs. And, as shown (*see supra*

31-32), by replicating Ms. Knight's (flawed) color-overlay analysis, Mr. Loetz

demonstrated that the Zuru Third-Generation Figurines are more different from the

Minifigure than the non-infringing, "different expression" Kre-O figurine.

TLG has ***never explained*** (nor could it) how the Third-Generation Figurines

infringe its asserted Minifigure copyrights if the Kre-O, Mega Bloks, and Friends

figurines would not. The district court asked for no explanation about this from TLG, and offered none in the Order. The Court should not countenance TLG's efforts to opportunistically move the goalposts as to what constitutes an infringing figurine to fit whatever claim it is asserting at the time.[9] TLG's prior admissions should be dispositive of its claim that the Third-Generation Figurines infringe.

## B. There Is No Actionable Confusing Similarity Between The Third-Generation Figurines And The Asserted Minifigure Trade Dress

TLG likewise offered no evidence or argument below—beyond repeatedly dropping the conclusory phrase "confusingly similar"—that would have allowed the district court to conclude that TLG had carried its burden to show it is likely to prove the Third-Generation Figurines infringe any of TLG's asserted Minifigure trade-dress rights. Even if it had tried, TLG could not meet its burden of proof, and to the extent the district court found otherwise, it was error for it to do so.

As a threshold matter, Zuru does not use TLG's alleged trade dress in the Minifigure as its own source identifier in the Third-Generation Figurines, and TLG

---

[9] The district court previously rejected Zuru's argument that TLG should be judicially estopped from arguing in this case that the Kre-O or Mega Bloks figurines are not so "different from" the Minifigure to be non-infringing. [Dkt.297]. But no matter whether judicial estoppel applies—Zuru submits it should, and reserves its right to appeal the district court's ruling on that issue—TLG's arguments in *Best-Lock* about the "differentness" of the Kre-O and Mega Bloks, now combined with its similar admissions from this case about the Friends figurines, still compel the conclusions that TLG's asserted copyright rights in the Minifigure are vanishingly thin and that Zuru's figurines are sufficiently "different" too.

has never contended otherwise. This alone defeats any likelihood of success. *See, e.g.*, *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2d Cir. 1990) (defendant's use of "name and photographs can infringe those rights only if that use was a 'trademark use,' that is, one indicating source or origin"); *cf. Jack Daniel's Props., Inc. v. VIP Prod. LLC*, 599 U.S. 140, 159-60 (2023) (proceeding to determine whether defendant's use of trade dress is likely to cause confusion after first determining defendant "uses its Bad Spaniels trademark and trade dress as source identifiers").

In any event, TLG made no showing—and the district court made no findings—that Zuru's Third-Generation Figurines infringe the asserted Minifigure trade dress. TLG never identified: (1) **what** its asserted trade-dress consists of; or (2) **how** Zuru's Third-Generation Figurines are confusingly similar to any protectable features of TLG's trade dress. This matters because, similar to copyright, only **non-functional** elements of TLG's asserted trade dress are protectable and thus may form the basis of an infringement claim. *See, e.g.*, *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001) (applying "well-established rule that trade dress protection may not be claimed for product features that are functional"); *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, 2024 WL 89120, at *2 (2d Cir. Jan. 9, 2024) (summary order) ("[o]nly non-functional trade dress is eligible for trademark protection"). TLG had a "heavy burden" to show which features of its Minifigure trade dress (if any) are "not functional" after having

protected the Minifigure with utility patents that have now expired. *TrafFix*, 532 U.S. at 29-30; *see supra* 13-14.

To ensure that only non-functional elements are compared, TLG was required to "give a precise description of the elements of its claimed trade dress"; mere reference to a registration is not enough "because while the registration is prima facie evidence of the mark's validity, it does not clarify the mark's scope." *Cardinal Motors, Inc. v. H&H Sports Protec. USA, Inc.*, 2021 WL 1758881, at *4 n.4 (S.D.N.Y. May 4, 2021); *see APP Grp.*, 2024 WL 89120 at *2 ("inclusion of photographs does not salvage the insufficient description because pictures are not a substitute for a precise description"). In turn, the district court was required to assess "the degree of similarity between the non-functional (ornamental) features of the competing products." *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 977 (2d Cir. 1987). Neither TLG nor the district court met these requirements.

By failing to advance any legally sufficient argument about confusing similarity, TLG waived the point—and plainly did not demonstrate likely success on its trade-dress infringement claim. *See Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015). Nonetheless, a review of just a few *Polaroid* factors exemplifies the absence of a likelihood of confusion. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961):

63

- ***Strength of the Trade Dress***: TLG itself views its asserted trade-dress (and constituent elements) as "generic" ([Dkt.236.at.SOF.13; Ex.41(151:11-152:19, 174:9-20); Ex.42(46:9-47:4); Ex.44(285:21-287:14); Dkt.239.at.Ex.16(pp.18-20)]), and its corporate designees were unable to recognize the blank shape and form of an undecorated Minifigure ([Dkt.236.at.SOF.14, Exs.18-19; Ex.38(57:16-59:20, 289:10-292:5); Ex.42(118:4-119:6, 121:5-122:22)]).  TLG's trade dress, limited to any protectable elements of the undecorated body form of the Minifigure, thus is extremely weak.  *See* 2 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 11:73 ("relatively weak marks are given a relatively narrow range of protection" as to "format variations").

- ***Similarity of the Trade Dresses***:  TLG makes no attempt to show how Zuru's Third-Generation Figurines are confusingly similar to any ***protectable*** features of TLG's trade dress.  Moreover, in light of TLG's admissions that the Kre-O and Mega Bloks figurines are a "different expression" of the Minifigure, and the Friends prototype is an "entirely different sculptural expression" (*see supra* 15-19), TLG is unlikely to establish that the Third-Generation Figurines—which are even ***more different*** from the Minifigure ([Dkt.312.at.Ex.B (¶¶45-58)])—are confusingly similar.  TLG's corporate designee testified she sees the Zuru

Second-Generation Figurine "as not having a lot in common in the overall shape and form of the minifigure design, but there are some similarities in shape." [Dkt.236-10.at.Ex.37 (123:5-126:2)]. The same must hold true as to the even more different Third-Generation Figurines.

- ***No Actual Confusion***: TLG offered no evidence of actual confusion (*e.g.*, a survey) between the Third-Generation Figurines and TLG's trade dress.

- ***No Intent To Deceive***: There is no basis to conclude that, through its Third-Generation Figurines, Zuru intends to deceive or confuse consumers as to an association with TLG. To the contrary, Zuru took pains to include a great number of substantial modifications, even if they resulted in decreased functionality, in a good-faith attempt to comply with the Contempt Order.

And although Zuru had no burden to do so, it introduced uncontested evidence that consumers are ***not*** likely to be confused by the Third-Generation Figurines. [Dkt.312.at.Ex.B (¶11)]. By any account, TLG has not met its burden to show a likelihood of success on the merits of a trade-dress infringement claim against the Third-Generation Figurines.

## III.  THE DISTRICT COURT ERRED INDEPENDENTLY BY GRANTING INJUNCTIVE RELIEF WITHOUT ADDRESSING ANY OF THE EQUITABLE FACTORS

The district court also failed to address any of the equitable factors, as it was required to do before enjoining the Third-Generation Figurines.  Failure to address these factors was itself an abuse of discretion.  *See Salinger v. Colting*, 607 F.3d 68, 83 (2d Cir. 2010) (vacating injunction: district court "considered only the first of the four factors that … must be considered before issuing a preliminary injunction").  While that error alone is enough to vacate the Order, the Court should reverse the Order because the undisputed record confirms that no such injunction can issue here.

### A.  TLG Failed To Show That It Would Suffer Irreparable Harm Absent A Preliminary Injunction

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quotations omitted).  To make such a showing, TLG was required to "demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent."  *Id.* (quotations omitted); *see Salinger*, 607 F.3d at 82 (must demonstrate absence of injunction "would actually cause irreparable harm").  TLG failed to make any such showing below.

***First***, as discussed (*see supra* 46-47), the trial on the merits will not even cover Zuru's Third-Generation Figurines, so any conceivable post-trial permanent

injunction cannot enjoin such sales. And if those figurines cannot be ***permanently*** enjoined in this action, *a fortiori* TLG cannot show it would be irreparably harmed absent a ***temporary*** injunction of the same products. The court's findings on the 2019 Preliminary Injunction were specific to the products presented at that time; TLG provided no argument or evidence that any supposed irreparable harm for those earlier products automatically bootstraps to the Third-Generation Figurines.

***Second***, the absence of any evidence of harm to TLG from Zuru's continued global sales (outside the U.S.) of its Second-Generation Figurines confirms that irreparable harm is unlikely as to the Third-Generation Figurines. Discovery produced ***after*** the 2019 Preliminary Injunction issued revealed that Zuru's and TLG's figurines coexist and compete in world markets such as New Zealand. [Dkt.312.at.Ex.G (¶3)]. Indeed, TLG conceded that Zuru's sales in New Zealand represent " ▉▉▉▉▉▉ ." [Dkt.312.at.Ex.G.at.Ex.1 (387:5-15)]. And during this period of worldwide coexistence, TLG's profits and reputation have showed no impact from Zuru's sales. [Dkt.313.at.Ex.H].

***Third***, as discussed (*see supra* Part II.A.3), other figurines—such as Kre-O and Mega Bloks—that look more similar to the Minifigure than Zuru's have remained on the market for many years without any complaint by TLG. [Dkt.312.at.Ex.G (¶2)]. If those figurines' sales do not irreparably harm TLG, then Zuru's cannot either.

### B.  TLG Failed To Show The Balance Of Hardships Favors A Preliminary Injunction

"A court must consider the balance of hardships … and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger*, 607 F.3d at 80.  The hardship claimed cannot be speculative.  *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995).  TLG failed to make this showing.

As explained above, Zuru made multiple significant modifications in its redesigns, and third parties continue to sell more similar figurines than the Third-Generation Figurines.  So even assuming TLG would suffer some lost sales—and there is no evidence it would—that "loss" would pale in comparison to the harm to Zuru and consumers from Zuru's complete exclusion from the U.S. construction-toy figurine market.  *See, e.g.*, *Sanho Corp. v. KaiJet Tech. Int'l Ltd.*, 2020 WL 1800372, at *5 (N.D. Ga. Jan. 22, 2020) (balance weighs against injunction where plaintiff would "pluck a single competitor … out of a crowded market") (citing *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)).

### C.  TLG Failed To Show The Public Interest Favors A Preliminary Injunction

"The court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (quotations omitted).  TLG offered no such evidence in support of injunctive relief, nor can it.

The injunction does not serve the public interest because it improperly hampers competition and the freedom of the marketplace. For example, the injunction interferes with marketplace competition because Kre-O and Mega Bloks are permitted to sell their "little man" figurines (which TLG concedes are "fair"), while Zuru is not be permitted to sell its *less similar* "little man" figurines, effectively excluding only a select competitor. *See, e.g.*, *Ethicon, Inc. v. U.S. Surgical Corp.*, 762 F. Supp. 480, 505 (D. Conn. 1991), *aff'd*, 965 F.2d 1065 (Fed. Cir. 1992) (denying preliminary injunction: "The public has an interest in competition between these two highly respected and innovative companies."); *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 316 (7th Cir. 1994) (no injunction: public would be harmed where defendant "would cease providing price competition with [plaintiff], the clear market leader"). Almost seven years after Walmart asked Zuru to design a "quality and affordable product" to compete against TLG (*supra* 19-20), the public is still deprived of it.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD REMAND FOR CLARIFICATION

As discussed, the district court improperly either issued a new injunction or modified the existing injunction. The underlying record is sufficiently developed such that this Court may resolve the issues presented, notwithstanding the brevity of the Order: no matter the district court's (undisclosed) reasoning, its ruling is contrary to law. But if this Court is not inclined to reverse outright, it should vacate

the Order and direct the district court to comply with all the requirements of Rule 65, including by providing sufficient factual and legal grounds for its ruling.

"[W]here the grounds for a district court's decision are unclear, a remand for clarification is appropriate." *Cohen*, 995 F.2d at 379-80; *see, e.g.*, *Zivkovic v. Laura Christy LLC*, 94 F.4th 269, 271-72 (2d Cir. 2024) (remanding "[t]o bring clarity to the record and to facilitate our review"); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 532-33 (2d Cir. 2018) (vacating order for "failure to provide a rationale … sufficient to enable us to fulfill our responsibility to provide meaningful review"); *Arkansas Tchrs. Ret. Sys. v. Goldman Sachs Grp., Inc*., 879 F.3d 474, 486 (2d Cir. 2018) (similar); *Martens v. Thomann*, 273 F.3d 159, 173 (2d Cir. 2001) (where "district court[] fail[s] to explain" its decision, Court will remand rather than "engag[e] in inappropriate speculation").

If the Court does remand, it should, in the interests of judicial economy and efficiency, provide the district court with guidance on the legal standards TLG must satisfy to secure injunctive relief on its copyright and trade-dress claims, including that any such assessment must exclude unprotectable elements.  *See, e.g.*, *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 150 (2d Cir. 2001) (copyright: "we believe it would be useful to provide guidance for the District Court on remand" on proper copyright legal standard) (citing cases); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 171 (2d Cir. 1991) (trademark: though not

70

necessary to resolve appeal, "we briefly discuss the doctrine of functionality to provide necessary guidance to the court below on remand").

## <u>CONCLUSION</u>

The Court should reverse the Order, or, in the alternative, vacate the Order and remand for further proceedings.

Dated:  May 24, 2024

Respectfully submitted,

By: */s/ Daniel C. Posner*
Daniel C. Posner
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
danposner@quinnemanuel.com

Todd Anten
William B. Adams
Dylan I. Scher
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Fatima Lahnin
CARMODY TORRANCE SANDAK &
  HENNESSEY, LLP
195 Church Street, 18th Floor
New Haven, CT 06509
(203) 777-5501

*Counsel for Zuru Inc.*

71

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because it contains <u>13,879</u> words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using **<u>Microsoft Word</u>** in **<u>Times New Roman, 14-point type</u>**.


Dated:  May 24, 2024                      Respectfully submitted,

By: */s/ Daniel C. Posner*
Daniel C. Posner
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
danposner@quinnemanuel.com

*Counsel for Zuru Inc.*

72

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 24, 2024, I electronically filed the Page Proof Brief for Defendant-Counter-Claimant-Appellant with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

*/s/ Daniel C. Posner*

Daniel C. Posner
