REDACTED - FOR PUBLIC FILING

# 24-634

In the

# United States Court of Appeals
## For the Second Circuit

**LEGO A/S, LEGO SYSTEMS, INC., and LEGO JURIS A/S,**

*Plaintiffs-Appellees*,

v.

**ZURU INC.,**

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Connecticut

**PAGE-PROOF BRIEF OF PLAINTIFFS-APPELLEES
LEGO A/S, LEGO SYSTEMS, INC., and LEGO JURIS A/S.**

John W. Cerreta
DAY PITNEY LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103

Elizabeth A. Alquist
DAY PITNEY LLP
Goodwin Square
225 Asylum Street
Hartford, CT 06103

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs LEGO A/S, LEGO Systems, Inc., and LEGO Juris A/S (collectively, the LEGO Group) submit this Corporate Disclosure Statement:

LEGO A/S is owned by KIRKBI A/S, a private Danish corporation, and the LEGO Foundation, a Danish entity.

LEGO Systems, Inc., is wholly owned by LEGO A/S.

LEGO Juris A/S is wholly owned by KIRKBI Invest A/S, a private Danish corporation.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF JURISDICTION.............................................................3

STATEMENT OF THE ISSUES..................................................................4

STATEMENT OF THE CASE.....................................................................5

I. The LEGO Group develops its Minifigure figurine, and ZURU copies it.................................................................................................5

   A. The LEGO Group develops its iconic Minifigure figurine.................5

   B. ZURU blatantly copies the Minifigure figurine...................................7

II. The District Court preliminarily enjoins ZURU from marketing its original infringing figurines and any figurines substantially similar or likely to be confused with the Minifigure figurine ...........................8

   A. The District Court considers all the evidence, receives full briefing from the parties, and enters its preliminary injunction...........8

   B. The Federal Circuit affirms ............................................................12

III. ZURU launches its "redesigned figurines" and is held in contempt.......13

IV. The District Court declines to dissolve its preliminary injunction, and ZURU does not appeal..................................................................16

V. Having failed to dissolve the injunction, ZURU seeks to evade it yet again...............................................................................................18

   A. ZURU files a notice of intent to manufacture and sell its so-called "Third-Generation Figurines....................................................18

   B. The District Court holds that the figurines fall within the existing preliminary injunction........................................................20

SUMMARY OF THE ARGUMENT ..................................................24

STANDARD OF REVIEW ................................................................26

ARGUMENT ...................................................................................27

I. The appeal must be dismissed for want of appellate jurisdiction ...........27

A.   This Court has no jurisdiction to hear an immediate appeal from an order that interprets, clarifies, or applies the terms of an existing injunction ................................................................27

B.   The District Court reasonably interpreted and applied its injunction, and its conclusion was plainly not the sort of obvious or blatant misinterpretation needed to confer appellate jurisdiction ...............................................................31

C.   None of ZURU's contrary arguments can save this appeal from dismissal. ...............................................................40

1.   The District Court did not change the terms of the preliminary injunction ................................................................41

2.   The District Court did not alter the legal relationship between the parties................................................................45

3.   The District Court did not change the enforcement mechanism.........47

4.   The District Court did not issue a wholly new injunction..................49

II.   The District Court correctly enjoined ZURU from launching the Third-Generation Figurines ....................................................51

A.   Legal standard....................................................................51

B.   The District Court correctly found that the LEGO Group was likely to succeed on the merits ..........................................52

C.   The District Court correctly weighed the equitable factors in granting preliminary injunctive relief, and its analysis applies equally to the barely perceptible changes in the Third-Generation Figurines. ........................................................61

CONCLUSION ..........................................................................64

-iii-

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Bukhari v. Dep't of Corr.*,
   720 F. App'x 655 (2d Cir. 2018) ........................................................50

*Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998) .................................................................52

*Chamberlain Grp., Inc. v. Skylink Tech., Inc.*,
   381 F.3d 1178 (Fed. Cir. 2004) .............................................................4

*Chevron Corp. v. Donziger*,
   990 F.3d 191 (2d Cir. 2021) .................................................................28

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*,
   No. 17-cv-04259, 2022 WL 16748778 (S.D.N.Y. Nov. 7, 2022) .....................31

*Diageo N. Am., Inc. v. W.J. Deutsch & Sons, Ltd.*,
   No. 22-2106,
   2024 WL 2712636 (2d Cir. May 28, 2024)... 2, 25, 29, 30, 31, 32, 38, 39, 49, 50

*DiTocco v. Riordan*,
   815 F. Supp. 2d 655 (S.D.N.Y. 2011),
   *aff'd*, 496 F. App'x 126 (2d Cir. 2012) ...........................................55

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................52

*Hamil Am., Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) ..................................................................54

*JLM Couture, Inc. v. Gutman*,
   91 F.4th 91 (2d Cir. 2024) ...........................................................*passim*

*Knitwaves, Inc. v. Lollytogs Ltd.*,
   71 F.3d 996 (2d Cir. 1995) .....................................................43, 52, 54

*LEGO A/S v. Best-Lock Constr. Toys, Inc.*,
　404 F. Supp. 3d 583 (D. Conn. 2019) ................................................................. 55

*LEGO A/S v. ZURU, Inc.*,
　799 F. App'x 823 (Fed. Cir. 2020) ...................... 1, 12, 13, 35, 37, 52, 53, 56, 62

*LEGO A/S v. ZURU Inc.*,
　No. 3:18-cv-02045, 2019 WL 4643718 (D. Conn. July 8, 2019) ........... 9, 10, 11

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
　602 F.3d 57 (2d Cir. 2010) ................................................................. 55, 61

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
　287 F.2d 492 (2d Cir. 1961) ................................................................. 10, 61

*Salinger v. Colting*,
　607 F.3d 68 (2d Cir. 2010) ................................................................. 51

*Scipar, Inc. v. Simses*,
　354 F. App'x 560 (2d Cir 2009) ................................................................. 49

*Silverman v. CBS Inc.*,
　870 F.2d 40 (2d Cir. 1989) ................................................................. 42, 43

*Tronox Inc. v. Kerr-McGee Corp.* (*In re Tronox*),
　855 F.3d 84 (2d Cir. 2017) ................................................................. 26, 28, 29

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
　423 F.3d 137 (2d Cir. 2005) ................................................................. 24, 27

*Wilder v. Bernstein*,
　49 F.3d 69 (2d Cir. 1995) ................................................................. 26

*WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) ................................................ 63

*Yurman Design, Inc. v. PAJ, Inc.*,
　262 F.3d 101 (2d Cir. 2001) ................................................................. 54

**Statutes**

17 U.S.C. § 106 ................................................................. 7

28 U.S.C. § 1292 ................................................................2, 16, 17, 27, 29

28 U.S.C. § 1331 .......................................................................................3

28 U.S.C. § 1338 .......................................................................................3

**Other Authorities**

5 *McCarthy on Trademarks and Unfair Competition* § 30:21 (5th ed.).................15

*Toy of the Year Awards, Winners*, https://toyawards.org/toyaward/winners.aspx
    (last visited August 13, 2024) ................................................................5

## PRELIMINARY STATEMENT

For the last six years, defendant-appellant ZURU Inc. ("ZURU") has been incorrigible in its persistent efforts to infringe the LEGO Group's copyrights and trademarks in its iconic Minifigure figurine. To put a stop to ZURU's behavior, the District Court entered a preliminary injunction—now affirmed on appeal—that "restrain[s] and enjoin[s]" ZURU from manufacturing or distributing both its original knock-off figurines and "any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks[.]" ECF No. 87 at 2; *see LEGO A/S v. ZURU, Inc.*, 799 F. App'x 823, 827–32 (Fed. Cir. 2020) (affirming the preliminary injunction). Shortly after the District Court issued its preliminary injunction, ZURU willfully violated it by launching a "redesigned" figurine that "ma[de] only insignificant changes" as a means of evading the District Court's injunction. ECF No. 139 at 21. In response, the District Court held ZURU in contempt. *Id.* Now, in the decision below, the District Court has once again held that ZURU's latest efforts to evade the injunction—through its so-called "Third-Generation Figurines"—are also "subject

-1-

to the Preliminary Injunction Order" and are thereby barred from being marketed or distributed under the injunction's plain terms. ECF No. 344 at 4.

This Court has no jurisdiction to review that interlocutory order, and it should dismiss this appeal. Under 28 U.S.C. § 1292(a)(1), the Courts of Appeals have jurisdiction to review orders granting or modifying preliminary injunctions, but orders that "merely clarify[]," "interpret[]," or apply the terms of an existing injunction "do not create appellate jurisdiction." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024). By its terms, the District Court's order does no more than interpret the prior injunction, clarify its meaning, and hold that ZURU's latest, barely altered versions of its prior figurines remain subject to the injunction's prohibitions. ZURU clearly "disagrees with the district court's findings that the proposed … redesigns did not comply with the injunction," but nothing in its brief establishes that "the district court committed 'an obvious or blatant misinterpretation'" of its own injunction "'ris[ing] to the level of a modification permitting interlocutory review.'" *Diageo N. Am., Inc. v. W.J. Deutsch & Sons, Ltd*.,

No. 22-2106, 2024 WL 2712636, *4 (2d Cir. May 28, 2024) (summary order) (quoting *JLM Couture*, 91 F.4th at 100).

Because the District Court did not *modify* its preliminary injunction, but rather *enforced* that order to prevent ZURU from evading it yet again, this Court has no appellate jurisdiction and should dismiss this appeal.

## <u>STATEMENT OF JURISDICTION</u>

The District Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because the LEGO Group's claims arise under the Copyright Act, 17 U.S.C. § 101, and the Lanham Act, 15 U.S.C. § 1051.

As detailed below, this Court has *no* jurisdiction to review the District Court's interlocutory order interpreting and applying its own preliminary injunction. The District Court's decision below holds only that ZURU's latest, *de minimis* alterations of its infringing figurines remain "subject to the Preliminary Injunction Order" and are barred from distribution under its terms. ECF No. 344 at 4. That sort of order

-3-

"merely clarifying or interpreting [an existing] injunction[] do[es] not create appellate jurisdiction." *JLM Couture*, 91 F.4th at 100.[1]

## STATEMENT OF THE ISSUES

1.  Whether this Court has jurisdiction to review an interlocutory order holding that ZURU's figurines are "subject to [an existing] Preliminary Injunction Order" and covered by that injunction's bar on distribution.

2.  Even if the Court had jurisdiction, did the District Court properly hold that ZURU's latest, barely altered versions of its figurines remain subject to the preliminary injunction because they are "substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks"? *See* ECF No. 87 at 2.

---

[1] The LEGO Group agrees that the proper Court to adjudicate any appeal in this case is now this Court, as opposed to the Federal Circuit, because the LEGO Group's patent claims have been withdrawn. *Chamberlain Grp., Inc. v. Skylink Tech., Inc*., 381 F.3d 1178, 1189 (Fed. Cir. 2004) (stating that actual or constructive amendment of complaint to "eliminate all issues of patent law" divests Federal Circuit of jurisdiction).

## STATEMENT OF THE CASE

**I.      The LEGO Group develops its Minifigure figurine, and ZURU copies it.**

**A. The LEGO Group develops its iconic Minifigure figurine.**

In 1977, the LEGO® Minifigure figurine was born in Denmark thanks to the creative genius of Jens Nygaard Knudsen, an employee of LEGO Futura ApS.  The following year, tangible copies of the Minifigure figurine were displayed and offered for sale internationally and in the United States.  ECF No. 243 ¶¶ 6–8.  For over 40 years, the Minifigure figurine has been included in numerous varieties of LEGO® brand toy sets.  *Id.* ¶¶ 9–10.

Since its launch, the LEGO® Minifigure figurine has gained renown and become a brand icon of the LEGO Group. The LEGO Group has sold millions of Minifigure figurines and received numerous Toy of the Year awards for LEGO® sets containing Minifigure figurines. *See Toy of the Year Awards, Winners*, https://toyawards.org/toyaward/winners.aspx (last visited August 22, 2024).

-5-

The LEGO Group owns copyrights covering the sculpture of the Minifigure figurine, including Registration Number VA0000655104 and VA0000655230. ECF No. 243 ¶ 1. Representative images from these registrations are set out below:

  

The LEGO Group's copyrights provide protection from unauthorized copying of the Minifigure figurine. This includes derivative works, such as substantially similar sculpture toy figurines, and two-dimensional renderings of such figurines. *See* 17 U.S.C. § 106(2). The LEGO Group also owns registered trademarks that cover the three-dimensional configuration of the Minifigure figurine, including Registration Number 4,903,968. ECF No. 243 ¶ 4. Having used the Minifigure mark in commerce continuously since 1978, the LEGO Group has common law trademark rights in the Minifigure figurine as well.



**Registered Minifigure Trademark**

### B. ZURU blatantly copies the Minifigure figurine.

In October of 2018, ZURU launched its MAX Build More line of construction toys at Walmart, including its MAX Build More 15 MAX Figurines. ECF No. 243 ¶ 19. ZURU was well aware of the LEGO Group's Minifigure figurines when it developed these products. ZURU's design process, such as it was, consisted of taking the Minifigure figurine, copying it, and then making minor adjustments,

-7-

shaving away plastic in some areas and adding millimeters of plastic in others. The result was a figurine strikingly similar to the LEGO Minifigure figurine. ECF No. 1 ¶ 23.



**II.   The District Court preliminarily enjoins ZURU from marketing its original infringing figurines and any figurines substantially similar or likely to be confused with the Minifigure figurine.**

    **A. The District Court considers all the evidence, receives full briefing from the parties, and enters its preliminary injunction.**

In December of 2018, the LEGO Group brought this action against ZURU in the U.S. District Court for the District of Connecticut. ECF No. 1. The LEGO Group claimed that ZURU's MAX Build More line of figurines infringed the LEGO

-8-

Group's Minifigure copyrights and its Minifigure trademarks. *Id.* ¶¶ 97, 103, 108. Along with its complaint, the LEGO Group filed a motion for a temporary restraining order and preliminary injunction. ECF No. 7. The Court held a hearing the next day and granted the temporary restraining order. ECF No. 21. It then received a full round of briefing from the parties, held a two-day evidentiary hearing on the preliminary-injunction motion, and also received another round of post-hearing briefs. In July of 2019, the Court granted the preliminary-injunction motion in a thorough, comprehensive opinion. ECF No. 86; ECF No. 87; *LEGO A/S v. ZURU Inc.*, No. 3:18-cv-02045, 2019 WL 4643718, at *18 (D. Conn. July 8, 2019).

In its preliminary-injunction ruling, the District Court weighed and assessed all the evidence under the four traditional preliminary-injunction factors—likelihood of success, irreparable harm, the balance of hardships, and the public interest. *LEGO A/S*, 2019 WL 4643718, at *2, *5–6 (citing *Salinger v. Colting*, 607 F.3d 68, 77, 79 (2d Cir. 2010)). The District Court first held that the LEGO Group was likely to succeed on the merits of its copyright-infringement claims. "The evidence at the hearing," the Court explained, "showed that the total concept and feel of the

-9-

defendant's infringing figurines [was] substantially similar to that of the plaintiffs' Minifigure figurine." *Id.* at *4. As the Court explained, the LEGO Group's expert, Elizabeth Knight, had "demonstrated the substantial similarities between the Minifigure figurine and the infringing Figurines." *Id*. Further, the actual side-by-side comparison of the "physical specimens of the Minifigure figurine and the infringing figurines"—submitted into evidence by both the LEGO Group and ZURU—also demonstrated substantial similarities evincing a likelihood of success on the merits. *Id.*

The Court then independently weighed the factors relevant to likelihood of confusion on the LEGO Group's claim for infringement of its Minifigure trademarks. *See id.* at *7 (citing *Polaroid Corp. v. Polaroid Elecs. Corp*., 287 F.2d 492, 495 (2d Cir. 1961)). "[E]ach of the *Polaroid* factors," the Court concluded, supported "the conclusion that there is a likelihood of confusion." *Id.* at *10.

Turning to the remaining preliminary-injunction factors, the Court credited the testimony of the LEGO Group's witnesses that ZURU's continued infringement would cause the LEGO Group to lose control of its brand, such that the LEGO brand

-10-

may become associated with "products that are not delivering our quality of play experience." *Id*. at *16. That sort of lasting, generational harm to the LEGO Group's goodwill and reputation could not be remedied by money damages or other relief after final judgment. *Id.* at *16–17. The Court thus found that the LEGO Group would "suffer irreparable harm" in the absence of a preliminary injunction. *Id*. at *17. This irreparable harm to the LEGO Group, moreover, "outweigh[ed]" the harm to ZURU resulting from "its own deliberate acts of infringement." *Id.*. And the public interest counseled against allowing ZURU to continue "to mislead and deceive . . . children and their families." *Id.*

By its terms, the Court's preliminary injunction "restrained and enjoined" ZURU from engaging in any of the following conduct:

> a. manufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of products, including the Infringing Products, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, ***including any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks***.

ECF No. 87 at 2 (emphasis added).

-11-

The District Court also ordered ZURU to ensure the removal of the infringing products from all Walmart stores, as that was ZURU's sole retailer. *Id.* at 2–3. In August of 2019, ZURU's Chief Operating Officer submitted a declaration averring that the MAX Build More 15 MAX figurines were no longer available for sale in the United States. ECF No. 97 ¶ 7.

### B. The Federal Circuit affirms.

ZURU appealed the District Court's preliminary injunction, and the Federal Circuit affirmed in relevant part.[2] *LEGO A/S*, 799 F. App'x at 826. The Federal Circuit upheld the District Court's factual finding that "the total concept and feel of [ZURU's infringing figurines are] substantially similar to that of LEGO's Minifigure Figurine" under this Court's test for substantial similarity. *Id.* at 831. Accordingly,

---

[2] In addition to the Minifigure figurine copyright infringement and trademark infringement claims detailed above, the LEGO Group initially asserted a copyright infringement claim pertaining to its Friends figurine (Count Five) and a patent infringement claim pertaining to its brick toys (Count Six) against ZURU. Compl. ¶¶ 120, 126. The District Court granted the LEGO Group's motion for a preliminary injunction with respect to those counts as well, *see* ECF No. 86 at 41–42, but the Federal Circuit vacated those portions of the District Court's ruling, 799 F. App'x at 838.

-12-

the Federal Circuit "affirm[ed] the district court's finding that LEGO is likely to succeed on the merits of its copyright infringement claim." *Id.*

The Federal Circuit then upheld the District Court's finding that the LEGO Group was likely to suffer irreparable harm absent a preliminary injunction, rejecting ZURU's argument that any harm was speculative or remote. *Id.* at 831–32 (citing *Salinger*, 607 F.3d at 81 and *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012)). The Court also upheld the finding that "the balance of hardships weighed in favor of granting a preliminary injunction," as any injuries to ZURU would "result solely from its own deliberate acts of infringement." *Id.* at 832 (quotation marks omitted). Because the Federal Circuit affirmed the district court's preliminary injunction ruling with respect to the LEGO Group's copyright claim, it had no need to separately consider the trademark claims. *Id.* at 828.

### III.   ZURU launches its "redesigned figurines" and is held in contempt.

Meanwhile, ZURU set out to evade the District Court's preliminary injunction by launching a "redesigned" MAX Figurine in October of 2019. ███████████

████████████████████████████████████████

-13-

████████████████████████████████████████████

███████████████████████████. ECF No. 247, Pls.' Sealed L.R. 56(a)(1) St.,

¶¶ 41–42; ECF No. 267-1, Def.'s L.R.56(a)(2) ¶¶ 41–42. An image of ZURU's first

redesigned figurine is produced below.



Upon learning of ZURU's launch of these redesigned figurines, the LEGO

Group promptly moved for contempt based on ZURU's willful evasion of the

District Court's Preliminary Injunction order. Following a hearing, the Court granted

the Motion for Contempt on November 20, 2019, finding that ZURU "cannot be

relied upon to keep a 'safe distance' from infringing activity[.]" ECF No. 139 at 26;

*see generally* 5 *McCarthy on Trademarks and Unfair Competition* § 30:21 (5th ed.) (explaining that, under the "safe distance" rule, an "enjoined defendant" may not "simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing"). As the Court explained, ZURU was "more concerned about being able to continue with the launch of the Redesigned Figurines than about complying with the Preliminary Injunction Order." ECF No. 139 at 22. In light of this willful contempt, the Court ordered ZURU to remove the Redesigned Figurines from the market and pay the LEGO Group's reasonable attorneys' fees and costs. *Id*. at 29.

The Court further concluded that any future attempts to "redesign" ZURU's infringing figurines would need to be subject to advance disclosure and review:

> [I]t is appropriate to require ZURU, Inc. to file a notice with the court, which shall include detailed information about any such figurine, at least 30 days prior to manufacturing, selling, offering for sale, distributing, displaying, or authorizing the sale of any figurine in its MAX Build More product line or in any replacement for the MAX Build More product line. This will allow sufficient time for the court to receive and act on any application for a temporary restraining order.

*Id.* at 26.

-15-

The District Court explained that this mechanism would relieve the LEGO Group of the burden of continuously monitoring the marketplace for further infringing activity. *Id.* at 26–27. Had it wished to do so, ZURU could have taken an immediate appeal from this order modifying the preliminary injunction. 28 U.S.C. § 1292(a)(1). But ZURU elected *not* to appeal this express modification of the District Court's preliminary injunction order.

## IV. The District Court declines to dissolve its preliminary injunction, and ZURU does not appeal.

In March of 2022, the LEGO Group and ZURU filed cross-motions for summary judgment. ECF No. 237; ECF No. 241. ZURU also filed a motion to dissolve the preliminary injunction. ECF No. 252. The District Court held oral argument on both the parties' cross-motions for summary judgment and the motion to dissolve. ECF No. 296, Tr. of Summ. J. Oral Arg. While the Court promptly denied ZURU's motion to dissolve the preliminary injunction, s*ee* ECF No. 297, the summary judgment motions remain pending.

In support of its motion to dissolve, ZURU raised all of the arguments that it now repackages in its appellate brief before this Court. For example, ZURU relied

-16-

heavily on alleged "admissions" by the LEGO Group in a decade-old litigation "assert[ing] the … Minifigure copyrights against a … figurine designed by a competitor called Best-Lock." *Compare* ECF No. 253 at 10–16,19–31 (memorandum in support of motion to dissolve) *with* ZURU Br. at 15–19, 31–32, 49–59 (repeating the same arguments in this appeal). Based on these supposed admissions, ZURU argued that, "[w]hen the unprotectable sizes and dimensions of the figurines are taken off the table, there are no similarities left between the Zuru figurines and the [Minifigure] figurine: every single other purported 'design' element, and their overall 'look and feel,' is different between them." ECF No. 253 at 29. The District Court, however, rejected these arguments and declined to dissolve the preliminary injunction. The Court held that nothing about the "pertinent statements in *Best-Lock*" or the LEGO Group's claims in that case provided any grounds for reconsidering or dissolving the preliminary injunction. ECF No. 297 at 17. Had ZURU wished to do so, it could have filed a timely appeal of the District Court's order "refusing to dissolve" the preliminary injunction. *See* 28 U.S.C. § 1292(a)(1). Once again, ZURU elected not to appeal that ruling.

-17-

**V.    Having failed to dissolve the injunction, ZURU seeks to evade it yet again.**

    **A. ZURU files a notice of intent to manufacture and sell its so-called "Third-Generation Figurines."**

Stymied in its efforts to dissolve the injunction, ZURU once again set about to evade its restrictions. In November of 2023, ZURU filed a notice of its intent to sell a new group of redesigned figurines. ECF No. 305. ZURU proposed ten versions of a figurine, which it called the "Third-Generation Figurines," and argued that they did not run afoul of the preliminary injunction or infringe the LEGO Group's copyright or trademark rights. *Id.* ¶¶ 14–15. Images of ZURU's Third-Generation Figurines are produced below.

-18-

| TLG's Minifigure | Zuru 3rd Gen v.1 | Zuru 3rd Gen v.2 | Zuru 3rd Gen v.3 | Zuru 3rd Gen v.4 | Zuru 3rd Gen v.5 |
| --- | --- | --- | --- | --- | --- |
| | | | | | |
| TLG's Minifigure | Zuru 3rd Gen v.6 | Zuru 3rd Gen v.7 | Zuru 3rd Gen v.8 | Zuru 3rd Gen v.9 | Zuru 3rd Gen v.10 |
| | | | | | |

The LEGO Group promptly filed a motion seeking a temporary restraining order to enjoin ZURU from launching the Third-Generation Figurines. ECF No. 306, Pls.' Emerg. Mot. for TRO. The LEGO Group argued that the Third-Generation Figurines were "substantially and confusingly similar to the Minifigure figurine copyrights and trademarks and, therefore, *are enjoined by the existing Preliminary*

-19-

*Injunction*[.]" ECF No. 307 at 5 (emphasis added);[3] *see also id.* at 27 (requesting that the district court "confirm that the Proposed Figurines are subject to the Preliminary Injunction"). The LEGO Group explained that it sought to "enforce—not expand or modify—the existing Preliminary Injunction" by enjoining the manufacture and sale of the Third-Generation Figurines. *Id.* at 11. The parties submitted briefing with numerous exhibits, and the District Court allowed ZURU to submit a sur-reply brief. *See* ECF Nos. 312, 324, 329, 331, 333.

## B. The District Court holds that the figurines fall within the existing preliminary injunction.

Following oral argument, the District Court ruled from the bench that the so-called Third-Generation Figurines were subject to the existing preliminary injunction. ECF No. 343; ECF No. 347, Tr. of TRO Oral Arg. at 20:13–16. A written ruling followed, in which the Court explained that the LEGO Group's motion for a

---

[3] Out of an abundance of caution, and recognizing the "unusual" procedural circumstances of the motion, the LEGO Group reiterated the arguments it made when seeking the original preliminary injunction regarding its likelihood of success on the merits of its copyright and trademark infringement claims and the irreparable harm it would suffer if ZURU were permitted to sell the infringing Third-Generation Figurines. ECF No. 307 at 10, 13–23.

-20-

temporary restraining order was denied as moot because there was "no need" to issue one, given that the Third-Generation Figurines were subject to, and barred from distribution by, the preliminary injunction already in place. ECF No. 344 at 4.

In its oral and written rulings, the District Court explained the procedural effect of the preliminary injunction and contempt order in detail. The contempt order directed ZURU to file a notice "at least 30 days prior to" manufacturing or selling any new figurines in its MAX Build More product line. ECF No. 139 at 28–29. The contempt order did *not* require ZURU to refrain from manufacturing or selling such figurines after the thirty-day notice window expired, which reflected a deliberate choice by the District Court to avoid a situation in which ZURU "develops a new figurine [the LEGO Group] agree[s] is non-infringing, but ZURU, Inc. nevertheless has to wait for approval from the court." *Id.* at 27.

Accordingly, the contempt order contemplated that the LEGO Group could file a motion for a temporary restraining order "as a means to put the court on notice that [the LEGO Group was] of the view that any proposed figurines are subject to the Preliminary Injunction Order," at which point the District Court could issue a

-21-

temporary restraining order "to maintain the status quo while the court made a determination as to whether that was so." ECF No. 344 at 2–3; *see also* ECF No. 347 at 18:9–15 ("What I thought was understood when I said that we'd have the notice and then there would be, there may be an application for a temporary restraining order, wasn't that the temporary restraining order would resolve the disagreement between the parties, but it would merely maintain the status quo while I resolve the disagreement between the parties.").

As it happened, the District Court did not need to issue a temporary restraining order to preserve the status quo because ZURU voluntarily did so. ZURU's Notice of Intent stated that, if the LEGO Group did not file a motion for a temporary restraining order within thirty days of the Notice, ZURU would construe that as agreement by the LEGO Group that the Third-Generation Figurines did not infringe the LEGO Group's copyrights or trademarks. ECF No. 305 ¶ 20; ECF No. 344 at 3. Along with its motion for a temporary restraining order, the LEGO Group proposed expedited briefing to be completed within that thirty-day window, but ZURU requested and received an extension that stretched the briefing schedule and oral

-22-

argument date beyond that thirty-day window. ECF No. 344 at 3; ECF Nos. 309, 331. The District Court interpreted this to mean that ZURU "would maintain the status quo with respect to the Proposed Figurines until the court held oral argument." ECF No. 344 at 3. A temporary restraining order was thus not necessary to maintain the status quo between the expiration of the thirty-day window following ZURU's Notice of Intent and the District Court's decision on whether the Third-Generation Figurines were subject to the preliminary injunction.

The District Court further explained that it purposely did *not* mention anything about a preliminary injunction in the contempt order because the Court did not contemplate "a full-blown relitigation with respect to whether injunctive relief should be ordered with respect to the proposed redesign[.]" ECF No. 247 at 18:16–20. Rather, the question to be resolved was "whether the proposed redesigned products were covered by the injunction or not." *Id.* at 18:21–23. On that question, the District Court agreed with the LEGO Group that the preliminary injunction covered ZURU's Third-Generation Figurines. *Id.* at 20:13–16.

-23-

The District Court therefore (1) held that ZURU's Third-Generation Figurines were subject to the preliminary injunction, (2) denied the LEGO Group's motion for a temporary restraining order as moot, and (3) reserved ruling on the LEGO Group's request for costs and fees associated with its motion for a temporary restraining order. ECF No. 344 4. The present appeal followed

## SUMMARY OF THE ARGUMENT

**I.** This Court has no jurisdiction over this appeal because the District Court's order below did not constitute a grant or modification of an injunction.

**A.** "[O]rders merely clarifying or interpreting injunctions do not create appellate jurisdiction." *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 99 (2d Cir. 2024). "An interpretation does not change the status of the parties, while a modification alters the legal relationship between the parties, or substantially changes the terms and force of the injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141–42 (2d Cir. 2005) (quotation marks and alteration marks omitted).

**B.** Here, the District Court reasonably interpreted its preliminary injunction order, which prohibited ZURU from manufacturing or selling *any* figurine that

-24-

infringed on the LEGO Group's Minifigure figurine, as prohibiting ZURU from selling its infringing Third-Generation Figurines. As in in *JLM Couture*, 91 F.4th at 100, and *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, No. 22-2106, 2024 WL 2712636, at \*4 (2d Cir. May 28, 2024) (summary order), the District Court's reasonable interpretation of its own injunction did not constitute a modification of that injunction.

**C.** ZURU's arguments that the District Court modified the preliminary injunction are unavailing. The District Court did not, and did not need to, change the terms or force of the preliminary injunction to prohibit ZURU from selling the infringing Third-Generation Figurines. Nor did the District Court alter the parties' legal relationship, as ZURU remains free to compete with the LEGO Group within the legal and procedural restraints that ZURU's repeated infringing conduct have rendered necessary. Finally, the District Court's clarification of the LEGO Group's enforcement mechanism did not ease the LEGO Group's burden in any respect. For those reasons, the Court should dismiss the appeal for lack of jurisdiction.

**II.** In the alternative, the Court should affirm the District Court's ruling because it correctly enjoined ZURU from launching its Third-Generation Figurines. The LEGO Group has been, and remains, likely to succeed on the merits of its claims because the total look and overall feel of the Third-Generation Figurines is substantially similar to that of the Minifigure figurine to the perception of an ordinary observer, and the Third-Generation Figurines, like their predecessors, are likely to be confused with the Minifigure figurine. The relevant equitable factors also continue to counsel in favor of enjoining ZURU from selling both its earlier knock-off figurines and the so-called Third-Generation Figurines.

## STANDARD OF REVIEW

This Court applies *de novo* review to the legal question of whether the district court's order modifies a preliminary injunction and is thereby subject to immediate appeal. *Tronox Inc. v. Kerr-McGee Corp.* (*In re Tronox*), 855 F.3d 84, 98 (2d Cir. 2017); *Wilder v. Bernstein*, 49 F.3d 69, 72 (2d Cir. 1995). District judges "are entitled to deference when interpreting their own injunctions, including an injunction's original reach." *JLM Couture*, 91 F.4th at 100 (quotation marks omitted)

-26-

(citing *In re Tronox*, 855 F.3d at 98–99). "Only an obvious or blatant misinterpretation rises to the level of a modification permitting interlocutory review." *Id.* (quotation marks omitted).

## **ARGUMENT**

I.    **The appeal must be dismissed for want of appellate jurisdiction.**

**A. This Court has no jurisdiction to hear an immediate appeal from an order that interprets, clarifies, or applies the terms of an existing injunction.**

Section 1292(a)(1) gives this Court jurisdiction to hear interlocutory appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). "These categories are narrowly drawn, and orders merely clarifying or interpreting injunctions do not create appellate jurisdiction." *JLM Couture*, 91 F.4th at 100 (citing *Weight Watchers Int'l, Inc.*, 423 F.3d at 141); *see also Weight Watchers Int'l, Inc.*, 423 F.3d at 141 ("An order reconsidering or interpreting a preliminary injunction . . . is not appealable.").

To be sure, even where, as here, an order does "not purport to modify [an] [i]njunction," this Court does not "simply take the District Court's word for it" and

-27-

automatically dismiss the appeal as a matter of rote. *In re Tronox*, 855 F.3d at 97–98. "[D]istrict courts are entitled to deference when interpreting their own injunctions, including an injunction's 'original reach.'" *JLM Couture*, 91 F.4th at 100 (quoting *In re Tronox*, 855 F.3d at 98–99); *accord Chevron Corp. v. Donziger*, 990 F.3d 191, 210 (2d Cir. 2021) ("[W]hen the district judge who is being asked to interpret an injunction is the same judge who entered it, courts give heavy weight to that interpretation on review" (quotation marks omitted)). But that deference does have an outer limit. "[A]n obvious or blatant misinterpretation" of the injunction "rises to the level of a modification permitting interlocutory review." *JLM Couture*, 91 F.4th at 100 (quotation marks omitted). On the other hand, if "the district court's order[]" was a "reasonable clarification[] or interpretation[] of the injunction," then the appeal must be dismissed. *Diageo*, 2024 WL 2712636, at *4 (summary order).

When assessing the reasonableness of a district court's interpretation of the terms of an injunction for jurisdictional purposes, a reviewing court must not conduct "too searching of a merits inquiry," lest the jurisdictional inquiry "'collapse'" into "'a decision on the merits'" and thwart the purpose of § 1292(a)(1).

-28-

*In re Tronox*, 855 F.3d at 98 (quoting *Birmingham Fire Fighters Ass'n 117 v. Jefferson Cty.*, 280 F.3d 1289, 1293 (11th Cir. 2002)).

This Court's decision in *JLM Couture* provides a helpful example of how these principles apply in practice. There, the defendant was a bridal designer and social media influencer who entered into an employment contract with a bridal boutique, under which the defendant agreed to design bridal apparel exclusively for the boutique and give the boutique access to her social media accounts for promotional purposes. *JLM Couture*, 91 F.4th at 96. After the parties' relationship broke down, the defendant changed the passwords of her social media accounts to deny the boutique access. *Id.* at 97. The boutique then brought suit, and the district court enjoined the defendant from breaching the employment contract by designing, marketing, or selling bridal apparel or any other category of goods designed and sold by the plaintiff boutique. *Id.* After the injunction issued, "the district court held [the defendant] in contempt of the preliminary injunction based on a series of Instagram posts teasing her return to the bridal industry." *Id.* at 98. The defendant filed an immediate appeal from that order, but this Court dismissed. While the defendant

-29-

claimed that the contempt order prohibited conduct that was not prohibited by the terms of the original preliminary injunction—such as the designer taking to Instagram to announce her new brand name—that was not enough to confer appellate jurisdiction. *Id.* at 100. As the Court put it, the "alleged modifications [were] merely interpretations of the original preliminary injunction with which [the defendant] disagrees," and they did not amount to the sort of "obvious or blatant misinterpretation" required to confer appellate jurisdiction. *Id.* at 100–01 (quotation marks omitted).

This Court's recent summary order in *Diageo* is similarly instructive. The plaintiff in *Diageo* was a seller of whisky that brought a trademark-infringement suit against a competitor and obtained an injunction against the defendant's use of an infringing product-label design. *Diageo*, 2024 WL 2712636, at *1. The defendant filed a "motion for clarification" with the district court, arguing that a redesigned product label would comply with the injunction and could be used consistent with its restrictions. *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, No. 17-cv-04259, 2022 WL 16748778, at *1 (S.D.N.Y. Nov. 7, 2022). The district court disagreed and

-30-

held that the redesigned product label was within the injunction's prohibition of any packaging that superficially or at a glance resembled the plaintiff's product label. *Id.* at *2. On appeal, this Court dismissed for want of jurisdiction. *Diageo*, 2024 WL 2712636, at *4. As the Court explained, the defendant undoubtedly "disagree[d] with the district court's findings that the proposed packaging redesigns did not comply with the injunction and, in doing so, invite[d] [this Court] to compare the proposed packaging redesigns and find differently." *Id.* at *4. But the Court "decline[d] [this] invitation" to engage in a comparison of the packaging, because "[n]othing in the record" demonstrated that "the district court committed an obvious or blatant misinterpretation that rises to the level of a modification" of the injunction's terms. *Id.* (quotation marks and alteration marks omitted).

### B. The District Court reasonably interpreted and applied its injunction, and its conclusion was plainly not the sort of obvious or blatant misinterpretation needed to confer appellate jurisdiction.

Under these settled principles, the District Court's order applying the terms of its own injunction and holding that "the proposed [figurine] redesigns did not comply with" its earlier order is at the very least reasonable and falls far short of the

sort of "obvious or blatant misinterpretation" required to confer appellate jurisdiction. *See Diageo*, 2024 WL 2712636, at *3–4; *JLM Couture*, 91 F.4th at 100.

By its terms, the District Court's preliminary injunction expressly contemplated the possibility that ZURU would design new, similarly infringing products. Specifically, the preliminary injunction barred ZURU from manufacturing or distributing both the particular "Infringing Products" at issue in the original motion and "*any figurine or image* that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks." ECF No. 87 at 2 (emphasis added). That order is not limited to the original infringing products that triggered this litigation; it specifically enjoins ZURU from manufacturing and selling *any figurine* that infringes the LEGO Group's Minifigure copyrights or trademarks.

When confronted with ZURU's latest effort to evade the injunction's terms— by way of its so-called Third-Generation Figurines—the District Court reasonably concluded that the slight, miniscule changes ZURU had proposed were insufficient and remained "substantially similar to the Minifigure Copyrights or likely to be

-32-

confused with the Minifigure Trademarks." *Id.* at 2; *see* ECF No. 344 at 4. That conclusion was reasonable, and does not approach the level of an obvious or blatant misinterpretation.

Indeed, the District Court's order was plainly reasonable—and entirely correct—when considered in light of the settled law of this case, as affirmed by the Federal Circuit on appeal. At the outset of this litigation, the District Court conducted a two-day evidentiary hearing, considered all of the parties' briefs and arguments, and held that "the total concept and feel of the defendant's infringing figurines" was "substantially similar to that of the plaintiffs' Minifigure figurine." ECF No. 86 at 11. The Court also rejected ZURU's functionality argument, finding that the LEGO Group was likely to establish that the Minifigure figurine has protectable elements. *Id.* at 15.

-33-

ZURU bitterly disagreed with that conclusion, appealed the District Court's decision to the Federal Circuit, and argued at length that "[o]ther than each being a small toy figure—a non-protectable idea—the LEGO



**Images Reproduced from ZURU's Federal Circuit Brief**

Figure Copyright and the ZURU Action Figure have little in common." ZURU Fed. Cir. Br. at Br. at 45, 48 (asserting that the Minifigure figurine "has the aesthetic look and feel of a submissive… robot," while the ZURU figurine has an "animated aesthetic look and feel of an aggressive fighter ready to leap into battle"). The Federal Circuit rejected that argument, however, and it expressly affirmed the District Court's finding that "the total concept and feel of [ZURU's infringing figurines are] substantially similar to that of LEGO's Minifigure Figurine." *LEGO A/S*, 799 F. App'x at 831.

Similarly, the District Court's earlier contempt ruling—which ZURU never attempted to appeal, and is now established as the law of the case—expressly found that ZURU's redesigned figurine continued to infringe the LEGO Group's copyrights and trademarks, and remained subject to the preliminary injunction. As the District Court explained, "the disparities pointed out by the defendant range from barely perceptible to very minor or miniscule disparities that are noticeable only if one sets out to detect them." ECF No. 139 at 15. Thus, "unless an ordinary observer set out to detect the disparities, that person would be disposed to overlook them and regard the aesthetic appeal of the two products as the same." *Id*. at 9.



**ZURU's First Redesigned Figurine**

In light of this history, and based on the evidence before the District Court, it was proper—and plainly not unreasonable—for the District Court to conclude that the miniscule, barely perceptible changes between ZURU's original infringing

figurines, its first attempt at a redesigned figurine, and its so-called "Third Generation Figurines" were virtually undetectable and legally insignificant, such that the "the total concept and feel" of these various iterations remained

"substantially similar to that of LEGO's Minifigure Figurine." *LEGO A/S*, 799 F. App'x at 831.



Redesigned Figurine



Zuru Gen 3 v.1




Image from '104 Deposit Material



Image from '230 Deposit Material

Image from '968 Trademark Registration



Redesigned Figurine



Zuru Gen 3 v.1



Image from '104 Deposit Material



Image from '230 Deposit Material

Image from '968 Trademark Registration



Redesigned Figurine



Zuru Gen 3 v.1



Image from '104 Deposit Material



Image from '230 Deposit Material



Image from '968 Trademark Registration

At bottom, ZURU clearly "disagrees with the district court's findings that the proposed [figurine] redesigns did not comply with the injunction," but ZURU has totally failed to establish "an obvious or blatant misinterpretation" of the sort that would justify this Court "compar[ing] the proposed [figurine] redesigns and find[ing] differently" in an interlocutory appeal. *Diageo,* 2024 WL 2712636, at *4 (quotation marks and alteration marks omitted).

The District Court also acted entirely reasonably in interpreting and clarifying the procedural effect of both the preliminary injunction and the pre-clearance requirements that the Court adopted in its contempt order. The contempt order directed ZURU to file a notice "at least 30 days prior to" manufacturing or selling any new figurines in its MAX Build More product line. ECF No. 139 at 28–29. The contempt order did *not* require ZURU to refrain from manufacturing or selling such figurines after the thirty-day notice window expired, which reflected a deliberate choice by the District Court to avoid a situation in which ZURU "develops a new figurine [the LEGO Group] agree[s] is non-infringing, but ZURU … nevertheless has to wait for approval from the court." *Id.* at 27. As the District Court explained,

-38-

however, the contempt order never contemplated "a full-blown relitigation with respect to whether injunctive relief should be ordered with respect to [a] proposed redesign[.]" ECF No. 347 at 18:16–20. Indeed, any such "full-blown relitigation" would have been directly contrary to the manner in which the District Court adjudicated ZURU's first redesigned figurine, for which it was held in contempt. Under both the preliminary injunction itself and the contempt order's 30-day pre-clearance mechanism, the question to be resolved was "whether the proposed redesigned products were covered by the injunction or not." *Id.* at 18:21–23.

That interpretation is not only reasonable, but in fact follows from the plain terms of the preliminary injunction itself, which expressly prevents ZURU from manufacturing or distributing "any figurine or image that is substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks." ECF No. 87 at 2. In light of that plain language, it was in fact correct—and in no way blatantly unreasonable—for the Court to conclude that the only question it needed to answer was whether "the preliminary injunction covered ZURU's Third-Generation Figurines." ECF No. 347 at 20:13–16; *accord Diageo*, 2024 WL

-39-

2712636, at *3–4 (dismissing appeal from an order holding that the defendant's redesigned whisky packaging remained subject to and barred by the district court's earlier injunction).

ZURU's Third-Generation Figurines thus fell squarely within the District Court's preliminary injunction order prohibiting ZURU from manufacturing and selling any figurine that is substantially similar to the LEGO Group's Minifigure figurine. The District Court did not, and did not need to, extend the scope of the preliminary injunction to prohibit ZURU from selling the Third-Generation Figurines. It simply applied that injunction's plain language. The Court should hold that nothing in the District Court's decision below amounted to "an obvious or blatant misinterpretation" of its own injunction, and it should dismiss this appeal for want of appellate jurisdiction. *JLM Couture*, 91 F.4th at 100 (quotation marks omitted).

### C. None of ZURU's contrary arguments can save this appeal from dismissal.

ZURU strains at length to overcome the clear jurisdictional bar to its appeal and establish that the District Court's enforcement of its injunction was somehow

-40-

tantamount to a modification. None of these arguments has merit, and this Court should reject them here.

1. The District Court did not change the terms of the preliminary injunction.

ZURU argues that the District Court's order extended the preliminary injunction to include "*any* figurine that approximates the (unprotectable) fit and functionality of the Minifigure, no matter how different the figurine is with respect to the Minifigure's potentially protectable 'design' features." Def.'s Br. at 42 (emphasis in original). But this argument mischaracterizes the District Court's order, reflecting ZURU's underlying disagreement with original injunction itself. The District Court did not expressly or implicitly rely on particular protectable or unprotectable features of the Minifigure figurine when crafting the original preliminary injunction. Nor did the Federal Circuit do so when it affirmed that injunction on appeal. Rather, the District Court and the Federal Circuit prohibited ZURU from manufacturing and selling *any figurine* whose "total concept and feel" and "aesthetic appeal" are "substantially similar" to that of the Minifigure figurine.

-41-

ECF No. 86 at 9 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (quotation marks omitted)).

Throughout its redesigns, ZURU has attempted to evade the preliminary injunction by pointing to miniscule changes in its MAX Build More figurine designs. But the District Court has repeatedly explained that the substantial similarity standard takes into account the perspective of an "ordinary observer" who does not "set out to detect the disparities" between the two figurines. *Id.* After multiple hearings and testimony by both parties' experts, the District Court was well equipped to identify disparities "that an average lay observer, i.e., an adult who is buying toys for a child and looking briefly at the toys, would be disposed to overlook." ECF No. 139 at 15. Against that backdrop, ZURU's argument—that the district court effectively enjoined ZURU from copying *certain features* of the Minifigure figurine—strains credulity.

Nothing in *Silverman v. CBS Inc.*, 870 F.2d 40 (2d Cir. 1989), suggests otherwise. *Silverman* was a direct appeal from the issuance of an injunction, and the Court's jurisdiction was not at issue. The counterclaim-defendant in *Silverman* had

-42-

written a musical featuring characters from the counterclaimant's radio program and television adaptation. 870 F.2d at 42. The district court ultimately held that the counterclaimant had protectable copyrights in the scripts of the radio program from 1948 onward, but that the radio program scripts predating those copyrights were in the public domain. *Id.* at 43–44. On appeal, the Second Circuit modified the injunctive relief ordered to reflect that holding and to limit the injunction to those protectable elements. Unlike *Silverman*, however, ZURU never sought modification of the injunction here on direct appeal to the Federal Circuit, nor did the Federal Circuit engage in any such modification or narrowing of the injunction's plain terms.

Moreover, unlike *Silverman*, the District Court in this case *did* craft its preliminary injunction to protect the LEGO Group's copyright in the Minifigure figurine in accordance with Second Circuit copyright law. Neither the injunction nor the District Court's orders applying it have enjoined ZURU from copying any work in the public domain. Rather, the injunction simply follows this Court's precedents eschewing a "mechanical" exercise of extracting unprotectable elements and comparing only the distinctive elements of two works. *Knitwaves, Inc. v. Lollytogs*

-43-

*Ltd.*, 71 F.3d 996, 1002–03 (2d Cir. 1995). Consistent with that standard, the District Court's order enjoins ZURU from duplicating the total concept and overall feel of the Minifigure figurine. The order from which ZURU appeals prohibited it from selling the Third-Generation Figurines because their total concept and overall feel were so similar to the total concept and overall feel of the Minifigure figurine that an ordinary observer would overlook the miniscule disparities between them. The District Court's interpretation and application of the plain terms of the preliminary injunction to ZURU's "Third Generation" figurines was proper, in accord with Second Circuit precedent, and plainly not a blatant or obvious misinterpretation of the injunction's language rising to the level of a modification.

By arguing that the District Court effectively enjoined ZURU from manufacturing and selling any figurine containing certain unprotectable features found in the Minifigure figurine, ZURU actually takes issue with the Second Circuit's substantial similarity standard. But that issue is not properly before the Court in this interlocutory appeal of a District Court order applying the clear terms of a preliminary injunction. At the very least, the District Court reasonably

-44-

interpreted and applied its own words in the injunction, and this Court has no jurisdiction to review that order at this stage.

> 2. The District Court did not alter the legal relationship between the parties.

There is also no merit to ZURU's claim that District Court's straightforward application of the preliminary injunction's unambiguous language somehow altered the legal relationship between the parties by preventing ZURU from "*attempting to*" compete with the LEGO Group. Def.'s Br. at 44 (emphasis in original).

To the extent ZURU suggests that the District Court obviated the notice and waiting period procedure set forth in the contempt order, ZURU is mistaken. Nothing in the record indicates that the District Court intended to vacate the contempt order's modification of the preliminary injunction. ZURU remains free to propose non-infringing figurine designs through the notice and waiting period procedure, and ZURU is free to manufacture and sell such figurines after the expiration of the thirty-day waiting period absent objection from the LEGO Group or after obtaining a district court order authorizing manufacture and sale of the

-45-

figurines.[4] In other words, ZURU is allowed to compete with the LEGO Group—subject to the legal and procedural restraints that ZURU's own infringing and contemptuous conduct has rendered necessary to protect the LEGO Group's copyrights.

Moreover, the District Court did not penalize ZURU for attempting to compete with the LEGO Group when it reserved ruling on the LEGO Group's request for an order directing ZURU to pay its costs and fees associated with its motion. As the District Court explained previously, a court has discretion to award reasonable costs of prosecuting a violation of its order, including attorneys' fees, where the violation was willful. ECF No. 139 at 20 (citing, among others, *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 8 (2d Cir. 1989)). ZURU has a history of willfully violating the District Court's orders in this litigation, which is

---

[4] ZURU attempts to paint the LEGO Group with an anticompetitive brush by cherry-picking a line from the oral argument before the district court. Def.'s Br. at 45. By stating that ZURU was "enjoined from coming up with new infringing figurines," ECF No. 347 at 5:12–13, counsel for the LEGO Group was stating only that ZURU was enjoined from launching any redesigned figurine that was substantially similar to the Minifigure figurine in infringement of the LEGO Group's copyrights and trademarks.

why the District Court instituted the notice and waiting period requirements. *See generally id.* As long as ZURU does not willfully attempt to evade or violate the District Court's preliminary injunction, ZURU is free to propose redesigned figurines without fear of sanction.

The District Court's preliminary injunction order and contempt order constrain ZURU's ability to *infringe* the LEGO Group's rights, not its ability to *compete* with the LEGO Group. Nothing about the District Court's order prohibiting the sale of ZURU's Third-Generation Figurines altered that status quo between the parties.

### 3. The District Court did not change the enforcement mechanism.

As explained above, the District Court preserved the notice and waiting period enforcement mechanism set forth in its contempt order; it did not change that enforcement mechanism. ZURU argues that the District Court "eased [the LEGO Group's] burden to obtain (and the court's burden to award) preliminary injunctive relief[.]" Def.'s Br. at 45. But the propriety of preliminary injunctive relief with respect to the Third-Generation Figurines was not before the District Court. Rather,

-47-

the question was whether the Third-Generation Figurines were covered by the existing preliminary injunction. *See* ECF No. 347 at 18:21–23.

To be sure, the District Court *clarified* the enforcement mechanism set forth in its contempt order. At the oral argument, it became clear that the parties maintained different positions on the procedure contemplated by the contempt order and the significance of the LEGO Group's request for a temporary restraining order. In resolving that dispute, the District Court identified the flaws in ZURU's position and explained the proper procedure to govern this unusual situation as set forth in the contempt order. As explained above, a temporary restraining order was meant to preserve the status quo between the end of the thirty-day waiting period and the District Court's decision about whether any new redesigned figurines fell within the scope of the preliminary injunction. Such a measure was not needed with respect to the Third-Generation Figurines given that ZURU voluntarily refrained from selling them during that time period.

This clarification of the preliminary injunction's enforcement mechanism did not alter it. As the Second Circuit has repeatedly held, a clarification of an

-48-

injunction—specifically, a district court order resolving an interpretive dispute that clarifies whether the injunction prohibits particular conduct—does not amount to a modification conferring appellate jurisdiction. *Scipar, Inc. v. Simses*, 354 F. App'x 560, 562 (2d Cir. 2009) (summary order). Here, as in past cases, the District Court's order clarifying that the preliminary injunction prohibited ZURU from manufacturing and selling the Third-Generation Figurines did not amount to a modification, and this Court has no jurisdiction to review that decision by way of an interlocutory appeal.

4. <u>The District Court did not issue a wholly new injunction.</u>

There is also no merit to ZURU's claim that the District Court's order somehow constitutes a "wholly new injunction" merely because the Third-Generation Figurines did not exist at the inception of the this litigation. Def.'s Br. at 46. District courts can, and do, craft injunctions to prohibit both ongoing and prospective conduct. Again, *JLM Couture* and *Diageo* are instructive. In *JLM Couture*, 91 F.4th at 100, the district court held that its existing preliminary injunction prohibited the defendant's new social media posts. And in *Diageo*, 2024

-49-

WL 2712636, at *4, this Court dismissed an appeal from an order holding that an existing injunction prohibited the defendant's new product label. In both cases, this Court lacked appellate jurisdiction to review orders interpreting and applying injunctions, because those injunctions were not modified or made new by enforcement against prospective conduct falling within the orders' original scope. *JLM Couture*, 91 F.4th at 100; *Diageo*, 2024 WL 2712636, at *4. By the same token, the existing injunction in the present case was not made new when the district court enforced it against ZURU's infringing Third-Generation Figurines.[5] The District

---

[5] ZURU cites *Al-Bukhari v. Department of Correction* for the proposition that the District Court issued a wholly new injunction, but that case is readily distinguishable. In that case, the district court denied a *pro se* incarcerated plaintiff's motion seeking a preliminary injunction compelling correctional officers to allow him to practice ritual bathing in observance of his religion. *Al-Bukhari v. Dep't of Corr.*, 720 F. App'x 655, 655 (2d Cir. 2018) (summary order). The Second Circuit affirmed the district court's decision on the ground that the factual basis of the plaintiff's motion did not appear in his complaint, which centered on allegations that he had been wrongfully denied his religious books. *Id.* at 656. In other words, the basis of the plaintiff's request for injunctive relief was entirely unrelated to the allegations of the complaint. That is clearly not true of the present action, which centers on ZURU's many related attempts to infringe the LEGO Group's copyrights and trademarks in the Minifigure figurine. The District Court's order here cannot be fairly characterized as a new injunction.

Court simply applied its injunction and held that ZURU's latest redesign effort remained subject to its terms. This Court has no jurisdiction to review that interlocutory order.

## II.   <u>The District Court correctly enjoined ZURU from launching the Third-Generation Figurines</u>.

### A. Legal standard.

Nevertheless, if the Court were to disagree with the LEGO Group's argument that it lacks appellate jurisdiction, the District Court still had discretion to enjoin ZURU from launching its Third-Generation Figurines, and its decision to do so was well within its discretion. In the Second Circuit, preliminary injunctive relief is proper if: (1) the plaintiff has demonstrated a "likelihood of success on the merits," (2) the plaintiff is "likely to suffer irreparable injury in the absence of an injunction," (3) the "balance of hardships between the plaintiff and defendant . . . tips in the plaintiff's favor," and (4) "the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 79–80 (quotation marks omitted) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

### B. The District Court correctly found that the LEGO Group was likely to succeed on the merits.

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The District Court found the first element satisfied, and the Federal Circuit affirmed, because the LEGO Group owns a valid copyright for the Minifigure figurine. ECF No. 86; *LEGO A/S*, 799 F. App'x at 828.

The second element of the *Feist* test requires the LEGO Group to demonstrate that: (1) ZURU has "actually copied" the Minifigure figurine; and (2) "the copying is illegal because a substantial similarity exists between [ZURU'S] work and the protectable elements of [the asserted copyrights]." *Knitwaves, Inc.*, 71 F.3d at 1002. "Actual copying may be established either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony." *Castle Rock Ent., Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quotation marks omitted).

-52-

The record is replete with evidence that ZURU actually copied the LEGO Group's Minifigure figurine. As the District Court explained in its original preliminary injunction ruling, ZURU undoubtedly had access to the Minifigure figurine because it "has been sold in large quantities since 1978," such that it would be "implausible that a competing toy company in the figurine business would not have known of the Minifigure figurine." ECF No. 86 at 8; *see also LEGO A/S*, 799 F. App'x at 828 (affirming the district court's finding of access). Moreover, with respect to the first version of the redesigned figurines, there was ample evidence of direct copying. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████. ECF No. 247, Pls.' Sealed L.R. 56(a)(1) St. ¶¶ 25–26, 37. The Third-Generation Figurines are virtually indistinguishable from those redesigned figurines, demonstrating ZURU's comparative design process that consistently reflects the Minifigure figurine. *See* ECF Nos. 307-2, 307-3. The likelihood of direct copying, as well as the combination

-53-

of access and striking similarities, demonstrate that the LEGO Group is likely to succeed on the issue of whether ZURU actually copied the Minifigure figurine.

In addition, the LEGO Group is likely to succeed on the issue of whether a "substantial similarity" exists between the Third-Generation Figurines and the protectable elements of the Minifigure figurine. *Knitwaves, Inc.*, 71 F.3d at 1002. In assessing whether two works are substantially similar for purposes of copyright infringement, the Second Circuit follows the "ordinary observer test" (sometimes called the "average lay observer" test). *Yurman Design, Inc.*, 262 F.3d at 111. Under this test, the question is whether "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999) (quotation marks omitted). "If 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work,' then the two products are substantially similar." *Yurman Design, Inc.*, 262 F.3d at 111 (quoting *Hamil Am.*, 193 F.3d at 100).

Especially in the case of works for children, the overall look and feel of the works is important in assessing substantial similarity. *DiTocco v. Riordan*, 815 F. Supp. 2d 655, 671 n.10 (S.D.N.Y. 2011) ("[C]onsideration of the total concept and feel of a work . . . is especially appropriate in an infringement action involving children's works, because children's works are often less complex than those aimed at an adult audience." (quoting *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996)), *aff'd*, 496 F. App'x 126 (2d Cir. 2012). "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual comparison of the works.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quoting *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 766 (2d Cir.1991)). "[T]he court must compare the works' 'total concept and overall feel ... as instructed by our good eyes and common sense.'" *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 609 (D. Conn. 2019) (ellipsis in original) (quoting *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66).

-55-

Here, the District Court correctly found that the total concept and overall feel of the Third-Generation Figurines was substantially similar to that of the Minifigure figurine. As the Federal Circuit explained in holding that ZURU's original Max Build More figurine was substantially similar to the LEGO Group's Minifigure figurine, the substantial similarity test does not allow a court to "take note of specific differences in shape, expression, and proportions" between the two figurines. *LEGO A/S*, 799 F. App'x at 831 (describing this approach as "fundamentally at odds with Second Circuit precedent"). Likewise, here, ZURU points to only miniscule changes in its Third-Generation Figurines that are virtually undetectable unless one sets out to detect the disparities in a side-by-side comparison such as the ones below.

  

Minifigure Figurine / Zuru Gen 3 v.1



Minifigure Figurine / Zuru Gen 3 v.2

Minifigure Figurine / Zuru Gen 3 v.3

Minifigure Figurine / Zuru Gen 3 v.4



Minifigure Figurine / Zuru Gen 3 v.5

  

Minifigure Figurine / Zuru Gen 3 v.6

  

Minifigure Figurine / Zuru Gen 3 v.7



Minifigure Figurine / Zuru Gen 3 v.8



Minifigure Figurine / Zuru Gen 3 v.9



Minifigure Figurine / Zuru Gen 3 v.10

Critically, when the Third-Generation Figurines are displayed in blister packaging, as they would be encountered by consumers, the miniscule disparities would be nearly impossible to discern.

The District Court was well-equipped to make this determination and to recognize that the barely altered "Third-Generation Figurines" were equally infringing. At the time it enjoined ZURU from selling the infringing Third-Generation Figurines, the District Court was already in the process of considering and drafting its ruling on the parties' cross-motions for summary judgment, and it had already decided to deny ZURU's motion on the LEGO Group's copyright claim. ECF No. 347 at 19:8–19. Moreover, the District Court was well versed in the testimony of the parties' expert witnesses comparing the figurines for the purpose of assessing an ordinary observer's perception, having heard their testimony with regard to ZURU's original Max Build More figurines and its original redesigned figurines. Accordingly, the District Court's finding that the Third-Generation Figurines were substantially similar to the Minifigure figurine was well founded in

both Second Circuit copyright law and the evidentiary record in this case. *See Peter*

*F. Gaito Architecture, LLC*, 602 F.3d at 64.[6]

> **C. The District Court correctly weighed the equitable factors in granting preliminary injunctive relief, and its analysis applies equally to the barely perceptible changes in the Third-Generation Figurines**.

Finally, the District Court previously found in its original preliminary-

injunction ruling that the LEGO Group was likely to suffer irreparable harm, that the

balance of hardships tipped in the LEGO Group's favor, and that the public interest

---

[6] The LEGO Group was, and remains, also likely to succeed on the merits of its trademark claim. In issuing its original injunction, the District Court found that the LEGO Group owns a trademark for the Minifigure figurine registered with the U.S. Patent and Trademark Office, ECF No. 86 at 16, and that ZURU's use of the infringing figurine was likely to cause confusion under the factors set forth in *Polaroid Corp.*, 287 F.2d at 495, ECF No. 86 at 17. Specifically, the District Court found that the mark of the LEGO Group's Minifigure figurine was "strong," *id.* at 19; there was a "high degree of similarity between the marks," *id.* at 20; the Minifigure and ZURU's figurine competed closely with each other in the relevant market, *id.* at 21; customers have experienced actual confusion, *id.* at 22; ZURU had actual knowledge of confusion and failed to correct such confusion, *id.* at 23; ZURU was "taking unfair advantage of the goodwill earned by the products of the LEGO Group," *id.* at 24; and the purchase of inexpensive toy figures for children does not require a high degree of sophistication, *id.* at 25. That analysis applies equally to the Third-Generation Figurines, and the LEGO Group's likelihood of success on that claim also warrants injunctive relief.

would not be disserved by issuance of injunctive relief. That analysis and reasoning remain compelling and apply equally to the barely perceptible changes in ZURU's latest effort to evade the injunction. Allowing ZURU to sell its infringing figurines is still "likely to result in considerable confusion, . . . lost goodwill and damaged reputation for the LEGO Group." ECF No. 86 at 42. The "highly competitive" nature of the construction toy market still counsels against allowing ZURU to wrongfully "establish relationships with customers for whom the LEGO Group competes" by marketing infringing products. *Id.* The costs of such injuries was then, and is now, "unquantifiable." *Id.*; *LEGO A/S*, 799 F. App'x at 832. Allowing ZURU to sell its infringing Third-Generation Figurines would just as surely cause unquantifiable and irreparable harm to the LEGO Group.

The District Court's finding that the balance of hardships tips in the LEGO Group's favor also applies equally to ZURU's Third-Generation Figurines. ECF No. 86 at 43. The Federal Circuit agreed with the District Court that ZURU's alleged hardships result "solely from its own deliberate acts of infringement[.]" *LEGO A/S*, 799 F. App'x at 832 (quoting ECF No. 86 at 43). "[I]t is axiomatic that an infringer

-62-

of copyright cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc.*, 691 F.3d at 287 (quotation marks omitted).

Finally, the public interest has favored—and continues to favor—enjoining ZURU from infringing the LEGO Group's copyrights and trademarks. As the District Court has already explained, "injunctive relief would be in the public interest because it would bar ZURU Inc. from continuing to mislead and deceive the relevant consumers, i.e. children and their families, and the public into believing that there is some connection between ZURU Inc. and the LEGO Group when, in fact, there is none." ECF No. 86 at 44. The public interest in just administration of federal copyright and trademark law remains compelling, and it fully supports continuing injunctive relief as to ZURU's original infringing figurines, the redesigned figurines for which ZURU has already been held in contempt, and ZURU's latest effort to evade the District Court's injunction and infringe the LEGO Group's copyrights and trademarks.

-63-

## **CONCLUSION**

The Court should dismiss this appeal for lack of appellate jurisdiction or, in the alternative, affirm the District Court's order.

> **PLAINTIFFS-APPELLEES,**
> **LEGO A/S, LEGO SYSTEMS,**
> **INC., and LEGO JURIS A/S.**
>
> John W. Cerreta
> Elizabeth A. Alquist
> Day Pitney LLP
> Goodwin Square
> 225 Asylum Street
> Hartford, Connecticut 06103
> (860) 275-0665
> (860) 275-0343 (fax)
> jcerreta@daypitney.com
> eaalquist@daypitney.com
>
> Their Attorneys

August 23, 2024

-64-

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as modified by this Court's Local Rule 32.1(a)(4), because the brief contains 10,556 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pitch Times New Roman font.

<u>/s/ John W. Cerreta</u>
John W. Cerreta

-65-

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

In addition, both the redacted public version of this brief and the sealed version were also served by email on all counsel of record.

<u>/s/ John W. Cerreta</u>
John W. Cerreta
