24-634-cv
*Lego A/S v. Zuru Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of March, two thousand twenty-five.

PRESENT:
 JOHN M. WALKER, JR.,
 RICHARD C. WESLEY,
 JOSEPH F. BIANCO,
  *Circuit Judges*.

─────────────────────────────────────────────

LEGO A/S, LEGO SYSTEMS, INC., LEGO JURIS A/S,

 *Plaintiffs-Counter-Defendants-Appellees*,

 v.   24-634-cv

ZURU INC.,

 *Defendant-Counter-Claimant-Appellant*.

─────────────────────────────────────────────

| | |
|---|---|
| FOR PLAINTIFFS-COUNTER-DEFENDANTS-APPELLEES: | JOHN W. CERRETA (Elizabeth A. Alquist, *on the brief*), Day Pitney LLP, Hartford, CT. |
| FOR DEFENDANT-COUNTER-CLAIMANT-APPELLANT: | DANIEL C. POSNER, Quinn Emanuel Urquhart & Sullivan, LLP, Los Angeles, CA (Todd Anten, William B. Adams, Dylan I. Scher, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY; Fatima Lahnin, Carmody Torrance Sandak & Hennessey LLP, New Haven, CT, *on the brief*). |

Appeal from an order of the United States District Court for the District of Connecticut (Alvin W. Thompson, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the case is **REMANDED**.

Zuru Inc. ("Zuru") appeals from an order of the District of Connecticut ruling that its redesigned toy figurines ("Third-Generation figurines") "are subject to" a preliminary injunction order previously entered in the case. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision.

## BACKGROUND

This case began with claims brought by Lego A/S, Lego Systems, Inc., and Lego Juris A/S ("Lego"), alleging that Zuru's "First-Generation" toy figurines infringe on the

copyright and trademark rights of Lego's Minifigure figurine.[1]  Upon filing suit in December 2018, Lego moved for a temporary restraining order ("TRO") and preliminary injunction, seeking to enjoin Zuru from marketing or selling its toy figurines.  The district court granted a TRO on December 14, 2018.  Subsequently, on July 8, 2019, the district court granted a preliminary injunction.  The preliminary injunction order enjoined Zuru from:

> manufacturing, selling, offering for sale, distributing, displaying or authorizing the sale of products, including the Infringing Products, containing unauthorized reproductions of the copyrighted and trademarked Minifigure figurine, including any figurine or image that is *substantially similar to* the Minifigure Copyrights or *likely to be confused with* the Minifigure Trademarks.

J.A. at 152 (emphasis added).  Zuru appealed to the Federal Circuit (Lego then had a design patent claim in play) and the Federal Circuit affirmed the portion of the preliminary injunction order pertaining to Zuru's figurines.  *See LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 827–32 (Fed. Cir. 2020).

---

[1] Lego's complaint included a claim for design patent infringement.  While the Federal Circuit has exclusive jurisdiction over cases involving patent claims, *see* 28 U.S.C. § 1295, this Court has jurisdiction over the present appeal because Lego has voluntarily abandoned its design patent infringement claim, thereby constructively amending its complaint to remove the claim, *see Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1188 (Fed. Cir. 2004) ("Federal Circuit jurisdiction depends on whether the plaintiff's complaint as amended raises patent law issues."); *id.* at 1189 (indicating that a constructive amendment to a complaint divests the Federal Circuit of jurisdiction if it "eliminate[s] all issues of patent law").  Lego confirmed the waiver of this claim at oral argument.

In the meantime, Zuru redesigned its figurines, releasing its "Second-Generation" figurines. At Lego's request, the district court held Zuru in contempt, finding that Lego had demonstrated by clear and convincing evidence that the Second-Generation figurines are "substantially similar to the Minifigure Copyrights or likely to be confused with the Minifigure Trademarks," in violation of the preliminary injunction order. J.A. at 169. The district court then modified the preliminary injunction order by requiring Zuru to give 30 days' notice before manufacturing or selling any new figurines.

Zuru filed a notice of intent to manufacture and sell its newly-developed Third-Generation figurines in November 2023, stating that they "fall outside the bounds of any protection" of Lego's asserted copyrights and trademarks. J.A. 468. Lego swiftly moved for a TRO. The district court issued an order enjoining the manufacture and sale of Zuru's Third-Generation figurines.

The relevant portion of the district court's order states, in its entirety: "The Proposed Figurines are subject to the Preliminary Injunction Order." SPA-4.

## DISCUSSION

### I. Appellate Jurisdiction

Lego disputes our jurisdiction to hear this appeal. This Court has jurisdiction over appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). We lack jurisdiction, however, over appeals from

orders that merely interpret or clarify the terms of an injunction.  *See JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024).  When determining whether an order interprets or modifies an injunction, this Court applies *de novo* review, which requires at least a peek at the merits.  *See In re Tronox Inc.*, 855 F.3d 84, 98 (2d Cir. 2017); *see also EEOC v. Local 40, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 76 F.3d 76, 79 & n.2 (2d Cir. 1996).  The merits inquiry is more searching, however, where "the language the district court is interpreting is tied to a term defined by law."  *In re Tronox Inc.*, 855 F.3d at 99.  Those legal conclusions are reviewed *de novo*.  *Id.*

Zuru argues that the district court's order enjoining the sale of the Third-Generation figurines modified the preliminary injunction order by expanding its scope to include figurines that are not substantially or confusingly similar to any protectable elements of Lego's Minifigure.

We initially conclude that remand is warranted based on this record.  The preliminary injunction order contains terms of art, enjoining figurines that are "**substantially similar to** the Minifigure Copyrights or **likely to be confused with** the Minifigure Trademarks."  J.A. at 152 (emphasis added).  The injunction rightly applies to any figurine that meets the legal standard for copyright infringement (substantial similarity) or trademark infringement (likelihood of confusion).  *See Peter F. Gaito Architecture, LLC v. Simone Devel. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (copyright); *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 136 (2d Cir. 2023) (trademark).  Ordinarily,

5

this Court would review *de novo* the district court's findings of substantial similarity and likelihood of confusion as to the Third-Generation figurines to determine if the district court modified its preliminary injunction order by including the new generation of figurines as within its reach. *See In re Tronox, Inc.*, 855 F.3d at 99.

Here, however, the district court provided no reasoning for its decision.[2] This suggests that the district court may have simply imported its prior reasoning for enjoining the First- and Second-generation figurines into its analysis for the Third-Generation figurines. Further, it is unclear whether the district court compared the Third-Generation figurines to Zuru's earlier generation figurines instead of to Lego's Minifigure. Only the latter approach, however, would be consistent with the preliminary injunction order and copyright law. *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 63 (indicating that a finding of substantial similarity involves comparing "the defendant's work and the protectible elements of [the] plaintiff's").

---

[2] At the district court's February 2024 hearing, it informed the parties that it would deny Zuru's motion for summary judgment on the copyright claim and indicated that it already decided that the redesigned Third-Generation figurines are subject to the injunction. It stated:

> Having conducted my analysis with respect to the copyright issue, it is my conclusion . . . that the proposed products [the Third-Generation figurines] would be in violation of a preliminary injunction. . . . I didn't want to waste your time having you give a big presentation when I've really decided the issue in terms of what the analysis is and the legal questions that are presented with respect to the copyright issue. And the preliminary injunction, I think, does cover this proposed new product. I just don't agree with the - - with Zuru's position on that.

J.A. at 536.

We therefore find that a remand pursuant to this Court's procedure in *United States v. Jacobson* is appropriate for the district court to supplement the record by providing its assessment of whether the Third-Generation figurines are substantially similar to or likely to be confused with Lego's Minifigure. 15 F.3d 19, 22 (2d Cir. 1994). In particular, we instruct the district court on remand to apply the more discerning observer test in its assessment of substantial similarity.

## II.   Substantial Similarity and the More Discerning Observer Test

To establish copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To prove the second element, the plaintiff must demonstrate that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC*, 602 F.3d at 63.

Typically, substantial similarity is determined under the ordinary observer test: "whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal quotations and citation omitted). The ordinary observer test "asks whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'"

*Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1078 (2d Cir. 2024) (quoting *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995)).

Yet where a work contains both protectable and unprotectable elements, we apply the "more discerning observer" test. *See, e.g.*, *Zalewski v. Cicero Builder Devel., Inc.*, 754 F.3d 95, 102 (2d Cir. 2014) (applying the more discerning observer test where the aesthetic appeal of architectural designs was "due largely to unprotected elements"). This test, which is "intended to emphasize that substantial similarity must exist between the defendant's allegedly infringing design and the *protectible* elements in the plaintiff's design," *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 130 (2d Cir. 2003), requires "substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work]," *Abdin v. CBS Broadcasting Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001)). Thus, the court "must attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar." *Peter F. Gaito Architecture, LLC*, 602 F.3d at 66 (quoting *Knitwaves, Inc.*, 71 F.3d at 1002).

Under either test, the court must consider the "total concept and overall feel," *i.e.*, the court "compare[s] the contested design's total concept and overall feel with that of the allegedly infringed work." *Id.* (internal quotations and citation omitted); *see also Boisson*, 273 F.3d at 272. The "total concept and overall feel" analysis evaluates whether

8

similarities between the works are due to protected elements of the allegedly infringed work; it ensures that a finding of infringement is not based on unprotectable elements of the allegedly infringed work. *Tufenkian*, 338 F.3d at 134–35. "The more discerning observer test factors out unprotectible elements, but still requires a total-concept-and-feel analysis in comparing the protectible elements of the parties' works." 3 Patry on Copyright § 9:73, Westlaw (database updated Mar. 2025). We must, therefore, "'be more discerning, and ignore those aspects of a work that are unprotectable' as we apply the test, lest we conflate mere copying with wrongful copying." *Zalewski*, 754 F.3d at 102 (alterations adopted) (citation omitted). After all, the term "substantial similarity" is "properly reserved for similarity that exists between the protected elements of a work and another work." *Id.* at 101.

The Copyright Act provides guidance on what is and is not protectable. Copyright protects "original works of authorship," including "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). It is well-established that copyright protection does not extend to ideas. *Id.* § 102(b); *Zalewski*, 754 F.3d at 102 (stating that the ideas a work embraces "are in the public domain free for others to draw upon"). Rather, copyright protects the particularized expression of ideas. *See Peter F. Gaito Architecture, LLC*, 602 F.3d at 67 ("[T]he similarity between two works must concern the *expression* of ideas, not the ideas themselves." (emphasis added)); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d

9

357, 360 (2d Cir. 1983) ("The rendering of [an unprotectable idea] is not in itself protectable; only the particularized expression of that idea . . . can be protected.").

For sculptural works like Lego's Minifigure, copyright law does not protect the mechanical or utilitarian aspects of the work. *See* 17 U.S.C. § 101 ("[Pictorial, graphic, and sculptural] works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned."). Indeed, "[t]he functional aspects of a work are governed by patent law, not copyright law." *Zalewski*, 754 F.3d at 106 n.19 (citing *Baker v. Selden*, 101 U.S. 99, 104 (1879)).

Here, as Zuru argues, Lego is not entitled to copyright protection for the idea of a figurine or, more specifically, a "little man" figurine. Appellant's Br. at 35. Rather, Lego's copyright protection extends only to the particularized expression of that figurine. *See, e.g.*, *Mattel*, 724 F.2d at 360 (upholding finding of no substantial similarity between two products where their particularized expression of the same unprotectable idea—a "superhuman muscleman" crouching in a traditional fighting pose—differed based on the manner in which they "overemphasiz[ed] certain muscle groups"). Moreover, certain features of Lego's Minifigure may be functional, particularly those unpatented features that facilitate attachment to Lego's unpatented system of blocks.

Because the district court did not perform any analysis in applying the preliminary injunction to the Third-Generation figurines, we cannot discern whether its ruling was based on unprotectable elements of Lego's Minifigure. Accordingly, as stated above, we

remand the case to the district court pursuant to *Jacobson*. *See Jacobson*, 15 F.3d at 22. On remand, the district court must use the more discerning observer standard stated above to assess whether the Third-Generation figurines are substantially similar to Lego's Minifigure so as to fall within the scope of the preliminary injunction order. In doing so, it must not base its finding of substantial similarity on unprotectable elements of the Minifigure. The court must also assess whether the Third-Generation figurines are likely to be confused with Lego's Minifigure. *See Vans, Inc.*, 88 F.4th at 135–36.

Upon the district court's issuance of a new order, either party may reinstate this appeal by filing a letter with the Clerk of this Court. If either party files such a letter seeking further action from this Court, the matter will be referred to this panel.

\* \* \*

For the reasons set forth above, the case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:  
Catherine O'Hagan Wolfe, Clerk of Court